IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAUL CLARK; BRUCE CLARK AND IRAIDA CLARK, <br>     Plaintiffs, <br><br> vs. <br><br> MICHAEL T. CONAHAN; MARK A. CIAVARELLA; THE LUZERNE COUNTY JUVENILE PROBATION DEPARTMENT; SANDRA BRULO; ROBERT J. POWELL; PA CHILD CARE, LLC; ROBERT K. MERICLE; MERICLE CONSTRUCTION, INC.; GREGORY ZAPPALA; PINNACLE GROUP of JUPITER, LLC; BARBARA CONAHAN; CINDY CIAVARELLA; BEVERAGE MARKETING OF PA, INC,; VISION HOLDINGS, LLC; MID ATLANTIC YOUTH SERVICES CORP.; POWELL LAW GROUP, P.C.; JOHN DOE DEFENDANTS NOS. 1-10 AND JOHN DOE ENTITIES NOS. 1 through 10, <br><br>     Defendants. | CIVIL ACTION NO. 3:09-cv-02535 <br><br><br> JURY TRIAL DEMANDED <br><br><br> COMPLAINT |

**DEFENDANT MICHAEL T. CONAHAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION PURSUANT TO F.R.C.P. 12(b)(6) TO DISMISS PLAINTIFFS' COMPLAINTS ON THE BASIS OF JUDICIAL AND LEGISLATIVE IMMUNITY**

FILED
SCRANTON

FEB 2 2 2010

PER _____
DEPUTY CLERK

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................
TABLE OF AUTHORITIES ............................................................................................
I.  PROCEDURAL HISTORY ....................................................................................
II. FACTUAL BACKGROUND ..................................................................................
III STATEMENT OF THE QUESTIONS INVOLVED ..............................................
IV ARGUMENT ...........................................................................................................
    A. PLAINTIFFS COMPLAINTS MUST BE DISMISSED AS TO CONAHAN BECAUSE JUDICIAL IMMUNITY PREVENTS CIVIL ACTIONS AGAINST A JUDGE PERFORMING JUDICIAL FUNCTIONS. ....................
    B. TO THE EXTENT THAT CONAHANS ACTIONS ARE NOT PROTECTED BY JUDICIAL IMMUNITY, THEY ARE IMMUNE FROM SUIT THROUGH THE DOCTRINE OF LEGISLATIVE IMMUNITY AND PLAINTIFFS COMPLAINTS MUST BE DISMISSED ON THAT BASIS ......
IV. CONCLUSION ........................................................................................................

# TABLE OF AUTHORITIES

**Federal Cases:**

Baraka v. McGreevey, 481 F.3d 187 (3d. Cir. 2007) ..............................................................

Bogan v. Scott-Harris, 523 U.S. 44, 118 S.Ct. 966 (1998) .....................................................

Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872) ............................................................

Brominski v. County of Luzerne, 289 F.Supp.2d 591 (M.D. Pa. 2003) .................................

California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126 (3d Cir. 2004)...

Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183 (1980) ............................................................

Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 544 (1988) ................................................

Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760 (3d Cir. 2000) ...............................

Hollis-Arrington v. PHH Mortg. Corp., 205 Fed.Appx. 48 (3d Cir. 2006).................................

Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286 (1991).................................

Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213 (1967).................................

Ryan v. Burlington County, 889 F.2d 1286 (3d Cir. 1989).................................

Shepherdson v. Nigro, 5 F.Supp.2d 305 (E.D. Pa. 1998).................................

Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978).................................

**Federal Rules**

F.R.C.P. 12.................................

**State Constitutional Provisions:**

Pa. Const. Art. V, § 5.................................

**State Cases:**

Backert v. Warren, 439 A.2d 638 (Pa. 1981).................................

Commonwealth v. Johnson, 645 A.2d 234 (Pa. Super. 1994).................................

In re Estate of John E. duPont, 966 A.2d 636 (Pa. Super. 2009).................................

Lavelle v. Koch, 617 A.2d 319 (Pa. 1992).................................

**State Statues**

42 Pa. C.S.A. § 6301.................................

42 Pa. C.S.A. § 6302...................................................................................................

42 Pa. C.S.A. § 6304...................................................................................................

42 Pa. C.S.A. § 6321...................................................................................................

42 Pa. C.S.A. § 6341...................................................................................................

42 Pa. C.S.A. § 6352...................................................................................................

42 Pa. C.S.A. § 931.....................................................................................................

**State Rules:**
Pa. R.C.P. 1531..........................................................................................................

Pa.R.J.C.P. 513 .........................................................................................................

Pa.R.J.C.P. 515 .........................................................................................................

I.  **PROCEDURAL HISTORY**

Plaintiffs' commenced their action against Michael T. Conahan, hereinafter referred to as "Conahan" by filing their complaint on or about December 24, 2009. Plaintiffs assert claims against Conahan, in his personal capacity, pursuant to 42 U.S.C. § 1983, the Civil RICO provisions of 18 U.S.C. § 1961-1868, False Imprisonment and Intentional Infliction of Emotional Distress. Conahan submits this Memorandum of Law in support of his Motion pursuant to F.R.C.P. 12(b)(6) to dismiss the CAC and IPC, which has been filed contemporaneously herewith.

II.  **FACTUAL BACKGROUND**

In both Complaints, Plaintiffs allege that Conahan, during his tenure as President Judge of the Court of Common Pleas of Luzerne County and Defendant Mark A. Ciavarella, Jr., ("Ciavarella"), while a judge and later President Judge of the Court of Common Pleas of Luzerne County, accepted money from various other named Defendants in exchange for ensuring that juveniles adjudicated as delinquents in the Court of Common Pleas of Luzerne County would be detained at Pennsylvania Child Care, LLC ("PACC") and/or Western PA Child Care, LLC ("WPACC"). These entities have been named as Defendants in this litigation. With regard to Conahan, Plaintiffs'' Complaint alleges that the following actions, in which Conahan allegedly engaged, deprived the Plaintiffs of their constitutional rights pursuant to the United States Constitution and constituted violations of the aforementioned Civil RICO provisions:

1.  Conahan, as President Judge, signed a "secret 'Placement Guarantee Agreement'", with PACC, on behalf of the Court of Common Pleas of Luzerne County, in which the Court would exclusively place adjudicated juvenile

4

       delinquents at said facility.

2. Conahan, as President Judge, "had final decision-making with regard to Defendant Luzerne County's funding of the county-run River Street juvenile detention center" and that he officially acted to end any funding for the county-run facility.

3. Conahan suspended the transfer of juveniles to the county-run facility.

4. Conahan, along with Ciavarella, instituted a zero tolerance policy toward juveniles that engaged in delinquent activity and for failure to pay court ordered fines.

5. Conahan, along with Ciavarella, directed probation officers to increase the admissions of juveniles to the various detention centers in which they allegedly had a financial interest.

6. Conahan failed to recuse himself from delinquency proceedings when he knew that he possessed an alleged financial interest in ensuring full occupancy at the named Defendant juvenile detention centers.

Based upon the allegations contained in the Complaint, Conahan motions this Court pursuant to F.R.C.P. 12(b)(6) to dismiss Plaintiffs' Complaint as it pertains to him in that Plaintiffs have failed to state a claim upon which relief can be granted. In essence, Conahan argues herein that pursuant to the doctrines of judicial and legislative immunity, he is immune from liability for the alleged conduct as outlined in the Complaint, even if true, because he was acting as a judge performing judicial and legislative functions while in the course of his judicial position. Accordingly, the Complaints should be dismissed with prejudice in its entirety as it pertains to Conahan.

III     **STATEMENT OF THE QUESTIONS INVOLVED**

**WHETHER JUDICIAL IMMUNITY PROTECTS CONAHAN FROM SUIT WHEN HIS ACTIONS TOWARD JUVENILES ARE IN CONFORMITY WITH THE CONSTITUTIONAL AND STATUTORY AUTHORITY AFFORDED TO HIM AS A COMMON PLEAS JUDGE.**

(Suggested Answer: Yes)

**WHETHER LEGISLATIVE IMMUNITY PROTECTS CONAHAN FROM SUIT WHEN HIS ACTION IN DRAFTING, SUBMITTING AND IMPLEMENTING A BUDGET ARE IN CONFORMITY TO QUINTESSENTIAL LEGISLATIVE FUNCTIONS.**

(Suggested Answer: Yes)

IV     **ARGUMENT**

     A.     **PLAINTIFFS' COMPLAINT MUST BE DISMISSED AS TO CONAHAN BECAUSE JUDICIAL IMMUNITY PREVENTS CIVIL ACTIONS AGAINST A JUDGE PERFORMING JUDICIAL FUNCTIONS.**

In 1872 the doctrine of judicial immunity was recognized by the United States Supreme Court in the case of Bradley v. Fisher, 13 Wall. 335, 351, 20 L.Ed. 646 (1872). The Court held that judicial immunity was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Id. at 347. The doctrine applied even when a judge allegedly was to have acted maliciously or corruptly. Id. at 351. The severity of the injustice that may have been occasioned by the judge's action is not a proper consideration to determine whether or not judicial immunity should apply. Stump v. Sparkman, 435 U.S. 349, 363-364, 98 S.Ct. 1099, 1108 (1978); see also Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 544 (1988); Pierson v. Ray, 386 U.S. 547,

554, 87 S.Ct. 1213, 1218 (1967)(stating "it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences"); Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 769 (3d Cir. 2000)(same). Moreover, the Supreme Court has conclusively held that judicial immunity is "immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288 (1991)(applying judicial immunity to § 1983 claims); Hollis-Arrington v. PHH Mortg. Corp., 205 Fed.Appx. 48, 52 (3d Cir. 2006)(holding that judicial immunity applies to actions brought pursuant to RICO claims); Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183 (1980)(applying judicial immunity to conspiracy claims even when judge is found guilty of a crime).

A judge is afforded judicial immunity when he acts in his capacity as a judge. Stump, 435 U.S. at 362, 98 S.Ct. at 1107. To determine if a judge is immune from liability for performing certain actions, a two-part inquiry must be engaged as follows:

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity' . . . With respect to the second inquiry, we must distinguish between acts in the "clear absence of all jurisdiction," which do not enjoy the protection of absolute immunity, and acts that are merely in "excess of jurisdiction," which do enjoy that protection.

Gallas, 211 F.3d at 768-769 (internal citations omitted).

In Plaintiffs' Complaint, Conahan, individually and in concert with Ciavarella, is alleged to have instituted a "zero tolerance" policy toward juveniles adjudicated as delinquent and on probation. In other words, Plaintiffs claim that Conahan instituted a procedure in which the

terms of the juvenile's probation were so stringent that it was difficult for the juvenile not to violate the terms of probation, thereby resulting in that juvenile's detention. The Complaint alleges that Conahan created or acquiesced in the creation of a Specialty Court, which although alleged, but not succinctly outlined, was used as a tool to cause injury to the delinquent juveniles. Plaintiffs also allege that Conahan entered an agreement to place children at the Defendant juvenile detention facilities rather than the county facility, removed from the Court's budget funding for the county detention facility and directed that delinquent juveniles not be placed in the county detention facility. Taking the allegations as true,[1] the actions complained of by Plaintiffs fall within the doctrine of judicial immunity because they are judicial acts performed within the jurisdiction afforded to Conahan.

---

[1] A motion to dismiss pursuant to F.R.C.P. 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and drawing all reasonable factual inferences in favor of the plaintiff, it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would warrant relief. . . . In making this determination, we need not credit a complaint's "bald assertions" or "legal conclusions." California Public Employees= Retirement System v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (internal citations omitted).

The Constitution of Pennsylvania provides courts of common pleas with unlimited original jurisdiction in all cases, except as otherwise be provided by law and each Court shall have such divisions as provided by law. Pa. Const. Art. V, § 5. In its organization of the courts of common pleas, the General Assembly enacted law effectuating the aforementioned constitutional provision by vesting unlimited original jurisdiction in all actions and proceedings cognizable by law or usage in the courts of common pleas. 42 Pa. C.S.A. § 931(a). The Pennsylvania Juvenile Act, 42 Pa. C.S.A. § 6301 *et seq.*, confers jurisdiction upon the court of common pleas to adjudicate delinquency proceedings. 42 Pa. C.S.A. § 6321; see 42 Pa. C.S.A. § 6302 (defining "Court" as the "court of common pleas"). As alleged by the Plaintiffs, Conahan and Ciavarella, at all relevant times, were Judges of the Court of Common Pleas of Luzerne County. See CAC at ¶¶ 161 & 162; see generally IPC. The General Assembly has enacted legislation that specifically establishes that divisions within the court of common pleas are only administrative in nature and that all divisions are vested with the full authority of the entire court. 42 Pa. C.S.A. § 952; see also Commonwealth v. Johnson, 645 A.2d 234 (Pa. Super. 1994) *affirmed* 669 A.2d 315 (Pa. 1995)(holding "neither our state Constitution nor our statutes create a separate 'juvenile court' with separate subject matter jurisdiction. Rather, we have one court of common pleas for each judicial district with each division therein being vested with the jurisdiction of the whole court").

As Judges of the Court of Common Pleas of Luzerne County, Conahan and Ciavarella were authorized to enter orders regarding the disposition of delinquent juveniles, including, but not limited to the following:

1. placing the delinquent juvenile on probation under the supervision of the probation officer of the court and under conditions and limitations the court

prescribes; 42 Pa. C.S.A. § 6352(a)(2); see also Pa.R.J.C.P. 515;

2. committing the delinquent juvenile to an institution, youth development center, camp or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare; 42 Pa. C.S.A. § 6352(a)(3); see also Pa.R.J.C.P. 515;

3. ordering payment by the child of reasonable amounts of money as fines; 42 Pa. C.S.A. § 6352(a)(5) & (6); see also Pa.R.J.C.P. 515; and

4. obtaining reports and other evidence bearing on the disposition or the need for treatment, supervision or rehabilitation; 42 Pa. C.S.A. § 6341(d) & (e); see also Pa.R.J.C.P. 513(b).

When applying the two-prong test promulgated by the United States Supreme Court and outlined by the Third Circuit in Gallas, it is beyond peradventure that the acts of Conahan as pled and relied upon by Plaintiffs were judicial acts performed within the jurisdictional authority as promulgated through the Pennsylvania Constitution, the organizing statutes of the courts of common pleas and the Juvenile Act. The first step under the aforementioned two-prong test is to determine if the actions were taken in the judge's judicial capacity. Gallas, 211 F.3d at 768. In determining that issue, a Court must look to the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id. at 768-769. Without question judges of the court of common pleas enter disposition orders in delinquency cases which place delinquent juveniles on probation with conditions and limitations, commit delinquent juveniles to specific detention centers, order delinquent juveniles to pay fines and order that they undergo

psychological examination by a specific psychologist or psychiatrist. The judges also determine to which detention facility a particular juvenile delinquent is to be committed. Not only are these functions traditional acts exercised by judges, they are statutorily prescribed powers entrusted to judges of the courts of common pleas. 42 Pa. C.S.A. § 6341(d) & (e) and 6352(a); Pa.R.J.C.P. 513(b) & 515. Moreover, when the judge enters an order of disposition, which may impose probation, commit the juvenile to a specific detention facility, impose fines and order psychological testing, the juvenile is dealing with the judge in his judicial capacity. Ensuring that delinquent juveniles are placed in specific detention centers or examined by specific mental health specialists by executing agreements, ensuring funding, directing placement and ensuring specific mental examinations are all part and parcel to the disposition of delinquent juveniles under the Pennsylvania Juvenile Act. Plaintiffs' Complaint fails to allege that at any time Conahan performed the aforementioned acts in any other capacity than as a judge of the Court of Common Pleas of Luzerne County.

Plaintiffs' Complaint alleges, explicitly or implicitly, that Conahan directed juvenile probation office employees to abide by the "zero tolerance" policy imposed by he and Ciavarella as the policy related to the probationary terms of the delinquent juveniles's disposition orders and he disciplined those employees that did not comply therewith. Probationary officers derive their authority from the Juvenile Act. 42 Pa. C.S.A. § 6304. The Act specifically states that probationary officers are subject to the limitations imposed by the court of common pleas. Id. at 6304(a). In short, since probation officers are arms of the court of common pleas, any directive by a judge of that court to the probation officers constitutes a judicial act ensuring that the probationary terms applicable to delinquent juveniles are implemented. The directive, whether in open court or outside the presence of the litigants is an act customarily performed by a judge

11

and would be expected by the parties to the delinquency proceeding. Whether the court, sitting on the bench advises his probation officers to strictly apply the probation terms while the juvenile is present, or advises the probation officer within his chambers or while the probation officer sits at his desk without the child present is of no consequence. These are clearly customary functions of a judge which would be expected of the parties to a delinquency action.

As to the second part of the two-prong test, for judicial immunity not to apply, the Court must determine if Conahan's actions as identified in their Complaint "though judicial in nature, [were] taken in the complete absence of all jurisdiction." Gallas, 211 F.3d 768. Again, a simple reference to the Juvenile Act will resolve the inquiry. A judge of the court of common pleas statutorily has the authority to place delinquent juveniles on probation, commit them to detention facilities, impose fines and order them to undergo psychological testing by specific mental health specialists. 42 Pa. C.S.A. § 6341(d) & (e) and 6352(a); Pa.R.J.C.P. 513(b) & 515. In addition, the Juvenile Act allows judges to direct the commitment of juveniles to specific detention centers, including facilities operated under the direction or supervision of the court. 42 Pa. C.S.A. § 6352(a). It is not the case that Conahan acted in clear absence of authority, which would have deprived him of judicial immunity. In fact, Conahan's actions do not even rise to a level which would require an analysis of whether his actions were in excess of jurisdiction, which itself does not negate the application of the judicial immunity. To the contrary, Conahan's actions fall squarely within the jurisdictional authority granted to him by the Juvenile Act and he is afforded judicial immunity for his alleged actions.

In addition, Plaintiffs allege that Conahan failed to recuse himself from delinquency proceedings due to his alleged financial involvement with the detention facilities named as Defendants in this litigation. The act of recusal or failing to recuse by a judge is purely a judicial

12

act. See Shepherdson v. Nigro, 5 F.Supp.2d 305, 312 (E.D. Pa. 1998). Conahan's refusal to recuse himself clearly is a judicial act, subject to judicial immunity.

The Complaint alleges that the creation of procedures in a "Specialty Court," as created by Ciavarella in some fashion deprived the delinquent juveniles of their constitutional rights and facilitated the underlying corrupt actions by Conahan and Ciavarella. As an initial matter, the allegations in the Complaint surrounding the creation of the "Specialty Court" are so vague and lack any factual description, that this Court need not consider them for purposes of this Motion.[2] Nevertheless, in the event the Court does proceed with determining if the judicial immunity doctrine should be applied, the inquiry is whether a judge, acting within the "Specialty Court" by following the procedures developed therein, was acting in a judicial manner. Implicit in the Complaint is the allegation that Ciavarella created the "Specialty Court" from his judicial position in the juvenile court. However, no matter what label is applied ("Specialty Court", juvenile court, court of common pleas), the end result is that the jurisdiction affording Ciavarella the authority to perform in the manner that he did arose from the Pennsylvania Constitution and the organizing statutes for the courts of common pleas. Thus, the second prong of the two-part test is met. Moreover, Ciavarella acted as within his judicial capacity because the adjudication of juveniles or the disposition of them within the "Specialty Court" is an action that a judge would commonly perform and the litigants would have expected the judge to act in such a manner, thus satisfying the first prong. To the extent that the Plaintiffs have alleged similar actions by Conahan, he likewise enjoys judicial immunity.

---

[2] In making this determination, [this Court] need not credit a complaint's "bald assertions" or "legal conclusions." California Public Employees= Retirement System v. Chubb Corp., 394 F.3d at 143.

13

Finally, elaborate analysis is not required under the aforementioned two-part judicial immunity test when addressing Conahan's order in sealing the record and granting injunctive relief in the PACC action. Again, in satisfaction of the first prong of the aforementioned test, a judge typically engages in the exercise of sealing records[3] and granting injunctions[4]. Also, the parties would have expected that Conahan, as judge, could act in this fashion. Further, Pennsylvania appellate courts have held that trial judges are granted the power to seal judicial records and the Pennsylvania Rules of Civil Procedure allow trial courts to enter injunctions. See n. 5 & 6, *supra*. Thus, Conahan was not "without jurisdiction" to act as he did in sealing the judicial record and imposing an injunction in the PACC action, even if his acts may have been in "excess of jurisdiction." Judicial immunity must apply despite Plaintiffs' arguments to the contrary.

In that both prongs of the judicial immunity test have been satisfied, Plaintiffs fail to assert facts regarding Conahan sufficient to meet their burden of proof under a claim for relief pursuant to '1983, Civil RICO and Civil Conspiracy. Conahan's motion to dismiss pursuant to F.R.C.P. 12(b)(6) must be granted as to Plaintiffs' Complaint.

---

[3] See In re Estate of John E. duPont, 966 A.2d 636 (Pa. Super. 2009)(outlining the authority for a Court to issue orders sealing court records and holding that sealing public records is in the sound discretion of the trial court).

[4] See Pa. R.C.P. 1531 (granting the court the power to issue injunctive relief).

B.  **TO THE EXTENT THAT CONAHAN'S ACTIONS ARE NOT PROTECTED BY JUDICIAL IMMUNITY, THEY ARE IMMUNE FROM SUIT THROUGH THE DOCTRINE OF LEGISLATIVE IMMUNITY AND PLAINTIFFS' COMPLAINT MUST BE DISMISSED ON THAT BASIS.**

Although Conahan strongly contends that all of his actions were judicial acts as alleged in Plaintiffs' Complaint, and afforded judicial immunity, he is cognizant that Plaintiffs will argue that certain actions involving the budgetary process may fall outside his role as a judge. If the Court so finds, then the actions clearly fall within the legislative process that occurs between the legislative and judicial branches of government. Thus, these actions necessarily fall within the confines of the legislative immunity doctrine. "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity'" Bogan v. Scott-Harris, 523 U.S. 44, 54, 118 S.Ct. 966, 972 (1998). "Legislative immunity shields from suit not only legislators, but also public officials outside of the legislative branch when they perform legislative functions." Baraka v. McGreevey, 481 F.3d 187, 195-196 (3d Cir. 2007). In Baraka the Court of Appeals for the Third Circuit reiterated a two (2) part test that it had employed in cases that implicate the legislative immunity doctrine. The Third Circuit reiterated the test as follows:

> First, the act must be "substantively" legislative, i.e., legislative in character. Legislative acts are those which involve policy-making decision [sic] of a general scope or, to put it another way, legislation involves line drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration. In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

Id. at 198 (quoting Gallas, 211 F.3d 774, and Ryan v. Burlington County, 889 F.2d 1286 (3d Cir. 1989)). The Third Circuit in Baraka explained that the two-prong test is only a tool to assist in determining if an action is legislative and, therefore, is cloaked with absolute immunity. Id. at

15

198-199. As with the inquiry into judicial immunity, a court is not to consider the motives or intent of the individual behind the action complained of, but rather focus entirely on the nature of the act itself. Bogan, 523 U.S. at 54, 118 S.Ct. at 973.

The Bogan and Baraka cases provide strikingly analogous fact patterns that assist with the application of the law to the facts at bar. In Bogan, the mayor of the city of Fall River, Massachusetts, submitted a budget to the city counsel for consideration. Id. at 47; Id. at 969. Contained in the budget was a request for the elimination of funding for the Department of Health and Human Services (DHHS), which employed one individual. Id.; Id. That sole employee brought an action under § 1983 against the mayor and other public officials. Id.; Id. The mayor asserted legislative immunity and the Supreme Court agreed, stating that "[Mayor's] introduction of a budget and signing into law an ordinance also were formally legislative, even though he was an executive official" and these actions were "integral steps in the legislative process." Id. at 55; Id. at 973.

The same conclusion was reached in Baraka. In that case, the Governor of New Jersey proposed legislation to the New Jersey State Legislature, seeking to abolish the position of the State=s poet laureate after he had read a controversial poem. Baraka, 481 F.3d at 194. The Third Circuit held that the Governor's role in proposing the legislation was activity that is properly considered "legislative." Id. at 197. Applying the two-prong test cited above to determine if the action taken by the Governor was substantively and procedurally legislative, the Third Circuit found that it was. Id. at 199. Applying the doctrine of legislative immunity, the Third Circuit dismissed the former poet laureate's claim against the Governor. See also Brominski v. County of Luzerne, 289 F.Supp.2d 591 (M.D. Pa. 2003) (reiterating that the office of the individual has no bearing on whether legislative immunity is afforded to the official as

long as the acts performed are legislative).

Plaintiffs' Complaint alleges that Conahan sought to place delinquent juveniles in detention centers other than the county-run facility by entering into a contract with the private detention centers and by eliminating funding for the county-run facility. See CAC at ¶¶ 652 & 655; IPC at ¶¶ 34, 42, 66 & 143. The process of the court of common pleas of a particular county submitting its budget to the county commissioners is supported by history, custom and is recognized in law.[5] As the Bogan and Baraka cases dictate, the creation of a budget and the submission of same by one branch of government to another is quintessentially legislative in nature. The budgetary process involves the act of "linedrawing" and making "policy." It effects a wide range of individuals with far reaching implications, but sometimes it only effects a singular individual, as was the case in both the Bogan and Baraka cases. The fact that an action is legislative is not changed by the fact that a mayor, governor or judge submits the budget and engages in the budgetary process. In fact, procedurally, in the American system of government, the executive and judicial branches typically submit their budget to the legislative branch for consideration. See n. 8, supra. When Conahan, acting as President Judge, eliminated funding to the county-run detention facility and sought funding for the private detention centers in the budget that he proposed to the county commissioners as alleged, he acted legislatively. To effectuate that desire, Conahan executed the necessary agreement and delinquent juveniles were sent to the private detention centers, with the approval of the county commissioners.

Since Conahan's budgetary actions are legislative in nature and afforded legislative

---

[5] See Lavelle v. Koch, 617 A.2d 319 (Pa. 1992); Backert v. Warren, 439 A.2d 638 (Pa. 1981).

immunity, and Conahan also is afforded judicial immunity as described above, Plaintiffs have failed to state a claim upon which relief can be granted under § 1983 and the RICO claims. Conahan's Motion pursuant to F.R.C.P. 12(b)(6) must be granted.

## IV.   CONCLUSION

For the foregoing reasons, Defendant, Michael T. Conahan, respectfully requests that this Honorable Court grant is Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) and dismiss Plaintiffs' Complaint.

Respectfully submitted,

_____
Michael T. Conahan, Pro Se
301 Deer Run Drive
Mountain Top, PA 18707

## CERTIFICATE OF SERVICE

I, Michael T. Conahan, pro se, hereby certify that on 22nd day of February, 2010, I served a true and correct copy of the foregoing Brief in Support of Defendant Michael Conahan's Motion to Dismiss upon the following individuals, by the means indicated below:

First Class Mail, Postage Prepaid

Bridget E. Montgomery, Esquire
David J. Schertz, Esquire
Eckert Seamans Cherin & Merlott, LLC
213 Market Street
8th Floor
Harrisburg, PA 17101-2132

Michael O'Mullan, Esquire
Riker Danzig Scherer Hyland & Perretti, LLP
One Speedwell Avenue
Morristown, NJ 07962

Mark A. Ciavarella, Jr.
585 Rutter Avenue
Kingston, PA 18704