| | |
|---|---|
| RAUL CLARK; BRUCE CLARK and IRAIDA CLARK,<br><br>                               Plaintiffs,<br><br>vs.<br><br>MICHAEL T. CONAHAN; MARK A. CIAVARELLA; THE LUZERNE COUNTY JUVENILE PROBATION DEPARTMENT; SANDRA BRULO; ROBERT J. POWELL; PA CHILD CARE, LLC; WESTERN PA CHILD CARE, LLC; ROBERT K. MERICLE; MERICLE CONSTRUCTION, INC.; GREGORY ZAPPALA; PINNACLE GROUP of JUPITER, LLC; BARBARA CONAHAN; CINDY CIAVARELLA; BEVERAGE MARKETING OF PA, INC.; VISION HOLDINGS, LLC; MID ATLANTIC YOUTH SERVICES CORP.; POWELL LAW GROUP, P.C.; JOHN DOE DEFENDANTS NOS. 1-10 and JOHN DOE ENTITIES NOS. 1 through 10,<br><br>                               Defendants. | UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA<br><br>Civil Action No. 3:09-CV-02535-ARC<br><br>JURY TRIAL DEMANDED<br><br>ORAL ARGUMENT REQUESTED |

BRIEF IN OPPOSITION TO DEFENDANT MICHAEL T. CONAHAN'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO MIDDLE DISTRICT LOCAL RULE 7.6

{L0402734.1}

I.   COUNTER STATEMENT OF FACTS[1]

A.   Conahan and Others Conspire to Deprive Juveniles of Their Constitutional Rights for Personal Profit.

As set forth in the Complaint in detail, Defendant Michael T. Conahan served as a judge on the Pennsylvania Court of Common Pleas of Luzerne County. He served as the President Judge of Luzerne County from January 2002 through June 2007.

Conahan conspired with several individuals and entities to implement a scheme to send juveniles to certain detention centers for monetary gain for himself and his co-conspirators. The individuals and entities alleged to be involved in the scheme include the other defendants in this action.

Fellow judge Mark A. Ciavarella initiated the scheme when, in approximately June 2000, he met with Robert J. Powell about Mr. Powell's desire to construct a privately-owned juvenile detention facility in Luzerne County. Mr. Powell was a local attorney who regularly practiced in Luzerne County's courts. Ciavarella introduced Mr. Powell to Robert K. Mericle, who was a friend and business associate of Ciavarella, to assist with the juvenile detention facility idea. Mr. Mericle and his company, Mericle

---

[1] The following facts are taken from Plaintiffs' complaint in this action. (D.E. 1.)

1

{L0402734.1}

Construction, Inc., agreed to build a juvenile detention facility on land that Mr. Powell and his partner were to acquire.

Conahan and his co-conspirators needed juveniles to fill the new facility to ensure the success of their plan. But Luzerne County already operated its own juvenile detention facility which, upon information and belief, was adequate to meet the county's needs. In order to demonstrate that the Luzerne County juvenile detention facility was inadequate and to assure the success of their co-conspirators' facilities, Conahan and Ciavarella needed to dramatically increase the number of juveniles who were sentenced to custodial detention instead of receiving a non-custodial alternative sentence for relatively minor offenses.

Beginning at least as early as 2002 and possibly earlier and continuing thereafter, Ciavarella routinely sentenced juveniles to custodial detention for minor offenses. In doing so, Ciavarella systematically stripped the juveniles of their constitutional rights by denying them due process and a fair hearing. The actions of Ciavarella in sentencing juveniles to detention facilities for minor offenses had the effect of convincing Luzerne County to enter into contracts with the private facilities in which Mr. Powell, Mr. Mericle, Mericle Construction, PA Child Care, LLC (PACC) and Powell Law Group, LLC, all had an interest.

Conahan facilitated the increase in juveniles to PACC by insisting that the Luzerne County Juvenile Probation Department recommend placement rather than probation for juveniles, even insisting that members of the County Juvenile Department alter their recommendations in favor of placement.

In furtherance of the scheme, on January 29, 2002, Conahan signed a Placement Guaranty Agreement between PACC and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PACC facility. The agreement provided a guaranteed annual fee from Luzerne County to PACC of $1,314,000.00. As a further part of the scheme to defraud, Conahan entered into agreements guaranteeing placement of juvenile offenders with PACC, including a $58 million, 20-year lease with PACC, and took official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility, effectively closing a county-run youth detention center. Over the next six years, Ciavarella steered hundreds of Luzerne County youths to PACC, including Plaintiff Raul Clark (Raul). Neither Conahan nor Ciavarella disclosed their relationship with the other defendants.

For their efforts, Ciavarella and Conahan received $2.6 million through a complicated series of transactions detailed in the complaint. Ciavarella

and Conahan pled guilty on February 12, 2009 to a Bill of Information alleging two counts of fraud for their efforts to conceal payments made to them in exchange for referring children who appeared before Ciavarella to juvenile detention facilities. They have since withdrawn their guilty pleas.

### B. Raul Clark Becomes a Victim of Defendants' Scheme

In October 2002, Raul was a 14 year old high school freshman living in Luzerne County and attending Coughlin High School. He lived at home with his parents. Both Mr. and Mrs. Clark are deaf and they communicate primarily by sign language. They relied substantially upon Raul for assistance in communicating with the outside world with respect to their day-to-day affairs. Raul helped around the house, spoke to creditors of Mr. and Mrs. Clark and helped his father order parts for an auto repair business.

In or around July 2002, the local police arrested Raul, along with other children, and charged him with two misdemeanors offenses: (1) violation of the town's 10:00 p.m. curfew; and (2) possession of drug paraphernalia (a small pipe). The police did not find any drugs or drug residue in the pipe. Raul was told to appear before Ciavarella on or about November 4, 2002.

Raul and his parents attended the November 4, 2002 proceeding before Ciavarella. Ciavarella never explained to Raul that he had a right to a trial or the consequences of a waiver of the right to trial. Ciavarella disposed of Raul's case by finding him delinquent. Ciavarella then sentenced Raul to six months of custodial detention.

During the next few months, Raul was shuttled to various detention centers around the state. Each time he was moved, Raul was brought back before Ciavarella without counsel. Raul never appeared before Conahan.

In May 2003, Raul was again brought before Ciavarella. In violation of Raul's constitutional rights, Ciavarella told Raul at this proceeding that he did not require an attorney. Ciavarella released Raul from custodial detention and placed him on probation. Thereafter, Raul missed a single 8:00 p.m. curfew. As a result of this single missed curfew, Ciavarella summarily signed an order immediately remanding Raul to PACC. Raul served three days at PACC.

In early 2004, Raul's probation officer, Officer Bliche, took a urine sample from Raul at his school. This urine sample was one of dozens that the probation officer took at the school that day. Shortly thereafter, Raul was advised that he had failed the drug test and that PCP and

methamphetamines had been found in his urine. Raul had not ingested the drugs that were allegedly found in his urine. Ciavarella again summarily ordered Raul to PACC. Upon information and belief, the Department switched urine samples and/or falsely reported the test findings in order to incarcerate Raul and to obtain more money from Mr. and Mrs. Clark.

Both Raul and Mr. & Mrs. Clark have been damaged by Conahan's and his codefendants' actions. Between November 2002 and 2005, Mr. and Mrs. Clark paid $3,837.50 to Luzerne County to pay for Raul's incarceration and probation. Luzerne County even garnished Mrs. Clark's wages and unemployment benefits. More importantly, Raul has suffered great emotional distress and financial harm as a result of the actions of the Defendants.

On or about October 27, 2009, the Luzerne County Court of Common Pleas entered an Order expunging Raul's juvenile record. Plaintiffs thereafter filed a complaint in the Middle District of Pennsylvania alleging violations of plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983, civil RICO claims pursuant to 18 U.S.C. § 1962, and common law claims for false imprisonment and intentional infliction of emotional distress. Conahan now moves to dismiss the complaint against him on the grounds of absolute judicial and legislative immunity.

{L0402734.1}

II. COUNTER STATEMENT OF QUESTIONS PRESENTED

Should Defendant Conahan be denied judicial immunity for the acts alleged in the Complaint?

Suggested Answer: Affirmative.

Should Defendant Conahan be denied absolute legislative immunity for the acts alleged in the Complaint?

Suggested Answer: Affirmative.

III. LEGAL ARGUMENT

A. **Standard Of Review.**

A court will not dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(6) so long as the pleading contains "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). When considering the motion, the court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

B. **Conahan is Not Entitled to Judicial Immunity For The Acts Alleged in the Complaint.**

Conahan's assertion that all claims against him should be dismissed on the basis of judicial immunity is incorrect. Conahan details several allegations

{L0402734.1}

against him[2] and connects his conduct to alleged judicial acts, concluding he is therefore entitled to immunity. (Def. Br. 6-14.) However, this Court has already found that Conahan allegedly engaged in nonjudicial conduct that is not immune from suit.

Not all conduct by a judge is subject to immunity. See Mireles v. Waco, 502 U.S. 9, 9 (1991). The Supreme Court has articulated two principle exceptions to immunity. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Id. at 11 (citing Forrest v. White, 484 U.S. 219, 227-29 (1988); Stump v. Sparkman, 435 U.S. 349, 360 (1978)). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12 (citing Stump, 435 U.S. at 356-57; Bradley v. Fisher, 13 Wall 335, 351 (1872)). The burden of proving judicial immunity applies is on the party asserting the immunity. Burns v. Reed, 500 U.S. 478, 486 (1991).

Courts have developed a two-part test for determining if an act by a judge is a "judicial" act. First, the court considers the "the nature of the act itself,

---

[2] It appears that Conahan merely resubmitted his moving brief from his motion to dismiss in the Wallace case. The brief addresses several allegations that are not made in the complaint in this action. For example, Conahan addresses purported allegations that he presided over a matter involving defendant Powell despite a conflict of interest. Plaintiffs have made no such allegation. Plaintiffs have attempted to address Conahan's arguments in the context of the allegations made in this complaint.

{L0402734.1}

i.e., whether it is a function normally performed by a judge." Stump, 435 U.S. at 362. Second, the court considers "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id. Not all acts that a judge performs are judicial acts. The court must examine the "nature of the function performed, not the identity of the actor who performed it," to determine if judicial immunity applies to a particular act. Forrest, 484 U.S. at 229. For example, in Forrest v. White, the Court held that a judge's decision to demote and discharge a probation officer was not entitled to absolute immunity. Id. at 230. The Court reasoned that the act of discharging an employee was not a judicial or adjudicative decision even though the decision was necessary for providing a judicial system. Id. at 229. The Court noted that "[s]uch decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983." Id. In Wallace v. Powell, No. 09-286, 2009 U.S. Dist. LEXIS 109163 (M.D. Pa. Nov. 20, 2009), this Court noted that "[o]ther actions such as sending a fax, or hiring and firing subordinates, have been found to be administrative, rather than judicial, acts." Id. at *39. Thus, the Court must examine each fact alleged to determine if it is a judicial act.

This Court has already ruled that certain acts by Conahan in furtherance of the scheme were nonjudicial acts not subject to immunity. In

Wallace v. Powell, Conahan moved to dismiss the complaints in that action, arguing, among other things, he was entitled to absolute judicial immunity. Like this case, plaintiffs in Wallace have alleged a conspiracy whereby "Conahan and Ciavarella used their influence as judicial officers to select PACC and WPACC as detention facilities, and that they intentionally filled those facilities with juveniles to earn the conspirators excessive profits." Wallace, 2009 U.S. Dist. LEXIS 109163, *19. In that case, plaintiffs allege:

> Ciavarella sentenced thousands of juveniles to detention in violation of their constitutional rights such as the right to counsel, the right to an impartial tribunal, and the right to a free and voluntary guilty plea. Ciavarella acted 'in his administrative capacity' when he began discussions with Powell about constructing a new facility. Conahan and Ciavarella also pressured court probation officers to make recommendations in favor of incarcerating juvenile offenders, even when they would have otherwise recommended release. Conahan and Ciavarella also executed a number of schemes to conceal the unlawful proceeds of this conspiracy. They failed to disclose their financial relationship to the other Defendants, and knowingly and intentionally filed materially false annual statements of financial interests.

Id. at *20-21. Plaintiffs also alleged that Conahan "accept[ed] compensation in return for favorable judicial determinations." Id. at *19.

The Court granted Conahan's motion in part and denied his motion in part. The Court ruled that Defendant's "action granting injunctive relief preventing the release of the PACC audit" was subject to judicial immunity." Id. at *45. But the Court noted that "[f]ormer Judge Conahan . . . is not immune for

10

{L0402734.1}

the majority of his conduct, as the Plaintiffs allegations pertain to non judicial acts." Id. at 44-45. The Court further noted that the "shielding blanket of judicial immunity does not cover his actions simply because of his former status." Id. at 45. This distinction was specifically set forth in the Court's order:

> Defendant Michael Conahan's Motion to Dismiss (Doc. 216) is **GRANTED IN PART** and **DENIED IN PART** as follows:
> a. As to judicial immunity for granting of injunctive relief, the motion is **GRANTED**.
> b. As to the remainder the motion is **DENIED**.

Id. at *52. The Court noted that certain acts by Conahan were not judicial acts, including, but not limited to, (1) signing the "Placement Agreement" with PACC; (2) making budget requests to the Luzerne County Commissioners; and (3) coercing probation officers to change their recommendations regarding placement of youth defendants. Id. at *41. The Court found these types of acts were nonjudicial in nature and that Conahan was not immune from suit for these acts.

Here, all of Raul's allegations against Conahan concern nonjudicial conduct that this Court has already held is not subject to immunity. Plaintiffs' allegations relate to Conahan's signing of a Placement Guaranty Agreement between PACC and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PACC facility and removing funding from county budget for the Luzerne County's juvenile detention facility. (Compl. ¶ 70, 74, 77.) Conahan also insisted that the Department recommend placement rather than

11

{L0402734.1}

probation for juveniles brought before him, even insisting that members of the Department alter their recommendations in favor of placement. (Compl. ¶¶ 84-85.) Further, Conahan engaged in a series of transactions designed to conceal the payments made for his participation in the scheme, including payments by Mr. Powell, Mr. Mericle and PACC to persons and entities controlled by Conahan including his spouse, Beverage and Pinnacle. (Compl. ¶¶ 177-215.) Conahan is also not immune for his administrative acts in his role as President Judge. Thus, like Wallace, the complaint here contains ample allegations of nonjudicial acts to allow the claims against Conahan to proceed.

      C.      **Conahan is Not Entitled to Absolute Legislative Immunity For The Acts Alleged in the Complaint.**

Conahan further argues, alternatively, that he is entitled to absolute legislative immunity for his actions "involving the budgetary process." (Def. Br. 15.) Conahan argues that, by drafting, submitting and implementing the budget for the Court of Commons Pleas of Luzerne County, he is engaging in a legislative act that is entitled to immunity in the same way a mayor or governor acts in a legislative capacity by proposing and signing a budget. (Def. Br. 17.)

Absolute legislative immunity applies to public officials, including judges, when they perform legislative functions. See Bogan v. Scott-Harris, 523 U.S. 44, 54, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998); Baraka v. McGreevey, 481

F.3d 187, 196 (3d Cir. 2007); Forrester, 484 U.S. at 227; Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760 (3d Cir. 2000). The court must examine "the nature of the act" in order to determine if legislative immunity applies. Bogan, 523 U.S. at 54. The Third Circuit test for legislative immunity requires an act to be both substantively legislative, meaning it involves "policy making" or "linedrawing," and procedurally legislative, meaning that the action is taken pursuant to some "established legislative procedure." Baraka, 481 F.3d at 198.

This court in Wallace has already addressed and rejected Conahan's arguments that, in his capacity as president judge, his acts of drafting, submitting and implementing a budget for the court constitute legislative acts. Wallace, 2009 U.S. Dist. LEXIS 109163, *50. The Court determined that "[t]here appears to be no legal basis for the argument that the president judge has the legislative power to control and administer even a portion of the county budget." Id. The Court determined that the interaction between a president judge and the county commissioners was a "type of political lobbying distinct from legislative activity." Id. at *51. This Court held that "Conahan's activity with respect to the Luzerne County budget was not legislative in nature," and therefore immunity did not apply. Id.

Here, Conahan makes the same exact arguments he made before this Court in Wallace. The complaint in this action alleges that Conahan "entered into

13

{L0402734.1}

agreements guaranteeing placement of juvenile offenders with PACC and took official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility, effectively closing a county-run youth detention center." (Compl. ¶ 74; see also Compl. ¶¶ 77, 176.) Conahan's defense is the same as that rejected in Wallace—i.e., that he is entitled to legislative immunity for his actions of drafting, submitting and implementing a budget. Like Wallace, Conahan fails to show how his acts are substantively and procedurally legislative. Conahan's role in the budget process allows him to make "budget recommendations," which is activity more akin to "political lobbying" to a legislative body. See Wallace, 2009 U.S. Dist. LEXIS 109163, *50 (emphasis in original). His acts of drafting, submitting and implementing the court's budget do not implicate the type of policy making and linedrawing that are the hallmarks of traditional legislative activity. See Baraka, 481 F.3d at 198-99. Additionally, Conahan has not demonstrated that his actions were part of established legislative procedures. See id.

Further, Conahan's references to Pennsylvania law allowing the judiciary to exercise its "inherent power to compel expenditures" when necessary to ensure the proper administration of justice do not demonstrate a president judge engages in any legislative acts. See, e.g., Lavelle v. Koch, 617 A.2d 319 (Pa. 1992). In fact, the cases note that the inherent power should be exercised "only

under certain conditions so as not to offend the doctrine of separation of powers." Id. at 321. Thus, the Pennsylvania law cited by Conahan does not provide support for his claim that he is entitled to legislative immunity.

IV. **CONCLUSION**

For the foregoing reasons, the Court should deny Conahan's motion to dismiss the Complaint against him.

                    Respectfully Submitted
                    **ECKERT SEAMANS CHERIN**
                    **& MELLOTT, LLC**


                    /s/Bridget E. Montgomery
                    Bridget E. Montgomery, Esquire
                    PA I.D. No. 56105
                    ECKERT SEAMANS CHERIN &
                    MELLOTT, LLC
                    213 Market Street, Eighth Floor
                    Harrisburg, Pennsylvania 17101
                    Attorney for Raul Clark

Date: 03/09/10

Bridget E. Montgomery, Esquire
Pa. I.D. 56105
David J. Schertz, Esquire
Pa. I.D. 81925
Eckert Seamans Cherin & Mellott, LLC
213 Market Street
8th Floor
Harrisburg, Pennsylvania 17101-2132

Michael O'Mullan, Esquire
Harold Kofman, Esquire
Michael Anthony Fazio, Esquire
Pending Pro Hac Vice Admittance
Riker Danzig Scherer Hyland
& Perretti LLP
One Speedwell Avenue
Morristown, New Jersey, 07962
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, David J. Schertz, Esquire, hereby certify that on the 9th day of March, 2010, I served a true and correct copy of the foregoing document upon the following individuals in the following manner:

<u>Via ECF</u>

John G. Dean, Esquire
Timothy T. Myers, Esquire
Debora H. Simon, Esquire
Elliot Greenleaf & Dean
201 Penn Avenue, Suite 202
Scranton, PA 18503
***Attorneys for The Luzerne County Juvenile Probation Department***

Scott D. McCarroll, Esquire
Attorney I.D. No. 92985
P.O. Box 999
305 N. Front Street
Harrisburg, PA 17108-0999
***Attorney for Sandra Brulo***

Nicole Bednarek, Esquire
Palissery Law Offices
26 Pierce Street
Kingston, PA 18704
***Attorney for Pinnacle Group of Jupiter, LLC***

Edward P. McNelis, Esquire
Stephen D. Rhoades, Esquire
The Law Offices of Edward P. McNelis
19 East Broad Street
Hazleton, PA 18201
***Attorney for Defendants Barbara Conahan and Cindy Ciavarella***

{L0402734.1}

Jessica Richman Birk, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
24th Floor
Philadelphia, PA 19109
***Attorney for Defendants Robert J. Powell and Vision Holdings, LLC***

Bernard M. Schneider, Esquire
Brucker Schneider & Porter
300 Weyman Road, Suite 320
Pittsburgh, PA 15236
***Attorney for PA Child Care, LLC***

Kimberly D. Borland, Esquire
Ruth S. Borland, Esquire
Borland & Borland, LLP
69 Public Square, 11th Floor
Wilkes-Barre, PA 18701-2597
***Attorneys for Robert K. Mericle and Mericle Construction, Inc.***

Pro Se

Michael T. Conahan on behalf of himself and as President of Beverage Marketing of PA, Inc.

Mark A. Ciavarella
585 Rutter Avenue
Kingston, PA 18704

Via U.S. Mail, Postage Prepaid

Powell Law Group, PC
10 Fox Run Road
Drums, PA 18222

/s/David J. Schertz
David J. Schertz, Esquire

{L0402734.1}