**IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAUL CLARK, BRUCE CLARK and | : | |
| IRAIDA CLARK, | : | |
| Plaintiffs | : | 3:09-CV-02535-ARC |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| MICHAEL T. CONAHAN, et al. | : | |
| Defendants | : | |

**BRIEF IN SUPPORT OF MOTION
TO DISMISS OF DEFENDANT SANDRA BRULO**

**THOMAS, THOMAS & HAFER, LLP**

Scott D. McCarroll, Esquire
Attorney I.D. No. 92985
P.O. Box 999
305 N. Front Street
Harrisburg, PA  17108-0999
(717)237-7131

Counsel for Defendant Sandra Brulo

# **TABLE OF CONTENTS**

Table of Authorities ...................................................................................iii

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................1

II.   QUESTIONS PRESENTED.............................................................................11

III.  ARGUMENT ...................................................................................................14

      A.    Plaintiffs' Claim Against Defendant Brulo, In Her Official
           Capacity, Should Be Dismissed Because Plaintiffs' Voluntarily
           Dismissed Their Claims Against The Department And
           Defendant Brulo, In Her Official Capacity, Is Entitled To
           Eleventh Amendment Immunity .............................................................15

      B.    Plaintiffs' Claims Against Defendant Brulo, In Her Official
           Capacity, Fail To State A Claim Pursuant To 42 U.S.C. §1983
           Because Defendant Brulo, In Her Official Capacity, Is Not A
           "Person" For Purposes Of §1983 ...........................................................19

      C.    Plaintiffs' State Law Claims Against Defendant Brulo Should
           Be Dismissed Because Defendant Brulo Is Entitled To
           Immunity Pursuant To 42 Pa.C.S. §8521 ...............................................20

      D.    Plaintiffs' Claims Against Defendant Brulo, In Her Personal
           Capacity, Fail To State A Claim Because Defendant Brulo Is
           Entitled To Judicial Immunity Or Quasi-Judicial Immunity ..................21

      E.    Plaintiffs' Claims Against Defendant Brulo, In Her Personal
           Capacity, Fail Because Defendant Brulo Is Entitled To
           Qualified Immunity ................................................................................26

      F.    Plaintiffs' Claims Against Defendant Brulo Fail Because
           Plaintiffs Fail To Plead The Personal Involvement Of
           Defendant Brulo In Any Alleged Civil Rights Violations ......................29

G.    Plaintiffs' Claim For False Imprisonment Fails To State A Claim Because Plaintiff's Detention Was Pursuant To A Facially Valid Order Of Court ................................................................ 32

H.    Plaintiffs' Claim For Intentional Infliction Of Emotional Distress Should Be Dismissed Because Defendant Brulo's Actions Were Not Outrageous ................................................................ 34

I.    Plaintiffs Bruce And Iraida Clark's Claims Should Be Dismissed Because They Do Not Assert A Violation Of Their Civil Rights Or Defendant Brulo's Involvement In Any Alleged Violations .................................................................................... 37

J.    Plaintiffs' RICO Claims Against Defendant Brulo Should Be Dismissed Because Plaintiffs Fails To State A RICO Claim ................. 37

K.    Plaintiffs' Claim Of Conspiracy Should Be Dismissed ........................... 47

CONCLUSION ........................................................................................................ 50

# TABLE OF AUTHORITIES

## FEDERAL CASES

300 Broadway v. Martin Friedman Associates, P.C., 2009 U.S. Dist. LEXIS 95069 (D.N.J. Oct. 13, 2009)............................................................................43

Anderson v. Creighton, 483 U.S. 635 (1987)...........................................................27

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006).........................................44

Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).........................29, 30

Baker v. Monroe Twp., 50 F.3d 1186 (3d Cir. 1995)..............................................29

Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................................................................................................................15

Benn v. First Judicial District of Pennsylvania, 426 F.3d 233 (3d Cir. Pa. 2005) ..................................................................................................16, 17, 18

Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307 (M.D. Pa.1988) .....................35

Boyanowski v. Capital  Area Intermediate Unit, 215 F.3d 396 (3d Cir. Pa. 2000) .......................................................................................................................47

Brickell v. Clinton County Prison Board, 2009 U.S. Dist. LEXIS 82399 (M.D. Pa. September 10, 2009) ........................................................................30

Brominsky v. County of Luzerne, 289 F. Supp. 2d 591 (M.D. Pa. 2003)..............49

Butz v. Economou, 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)..........22

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001)...........................42

Corbett v. Morgenstern, 934 F. Supp. 680 (E.D. Pa. 1996)...................................35

Cortlessa v. County of Chester, 2005 U.S. Dist. LEXIS 25013 (E.D. Pa. 2005) .......................................................................................................................29

*D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943
(3d Cir. 1984) ................................................................................ 14

*Frankel v. The Disciplinary Board of the Supreme Court of Pennsylvania*,
2005 U.S. Dist. LEXIS 26961 (E.D. Pa. Nov. 8, 2005).................................... 20

*Galvani v. Pennsylvania*, 2008 U.S. Dist. LEXIS 89150 (M.D. Pa. Nov. 4,
2008) aff'd 2009 U.S. App. LEXIS 10117, 5 (3d Cir. Pa. May, 11, 2009) ....... 23

*Gigliotti v. Redevelopment Authority*, 362 F. Supp. 764 (W.D. Pa. 1973),
aff'd, 492 F.2d 1238 (3d Cir. 1974).................................................... 33

*Ginter v. Skahill*, 2006 U.S. Dist. LEXIS 77038 (E.D. Pa. 2006) aff'd 298
Fed. Appx. 161 (3d Cir. Oct. 28, 2008)............................................... 37

*Grisby v. Kane*, 250 F. Supp. 2d 453 (M.D. Pa. 2003)......................... 49

*Hamilton v. Leavy*, 322 F.3d 776 (3d Cir. 2003) ............................... 22

*Hans v. Louisiana*, 134 U.S. 1 (1890) ............................................ 16

*Harper v. Jeffries*, 808 F.2d 281 (3d Cir. 1986) ............................... 22

*Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193
(3d. Cir. Pa. 2008) .............................................................. 16, 18

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 175 L. Ed. 2d 943
(2010)............................................................................ 43, 44

*Hughes v. Long*, 242 F.3d 121 (3d Cir. Pa. 2001)............................. 23

*Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) ..... 22

*Jean-Pierre v. Bop*, 2008 U.S. Dist. LEXIS 22270 (M.D. Pa. 2008) ............ 49

*Kelly v. County of Montgomery*, 2008 U.S. Dist. LEXIS 61572 (E.D. Pa.
August 12, 2008) ........................................................... 21, 23, 33

*Kentucky v. Graham*, 473 U.S. 159 (1985).................................. 15, 20

Kokinda v. Breiner, 557 F. Supp. 2d 581 (M.D. Pa. 2008) ................................... 32

Kretchmar v. Bachtle, 2005 U.S. Dist. LEXIS 11136 (E.D. Pa. 2005) ................. 29

Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992) ........................................... 22

Larsen v. State Employees' Retirement System, 553 F. Supp. 2d 403 (M.D. Pa. 2008) ............................................................................................... 21

Lindsay v. Dunleavy, 177 F. Supp. 2d 398 (E.D. Pa. 2001) ................................. 29

Lockhart v. Hoenstine, 411 F.2d 455 (3d Cir. 1969) ............................................ 33

Magnum v. Archdiocese of Phila., 253 Fed. Appx. 224 (3d Cir. 2007) ................ 40

Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000) ................................................ 40

Mastromatteo v. Simock, 866 F. Supp. 853 (E.D. Pa. 1994) ................................ 36

McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992) .............................................. 50

Millar v. Windsor Township, 2005 U.S. Dist. LEXIS 17433 (M.D. Pa. 2005) ...... 14

Morse v. Lower Merion Sch. District, 132 F.3d 902 (3d Cir. 1997) ..................... 14

Mortensen v. First Federal Savings & Loan Associate, 549 F.2d 884 (3d Cir. 1977) ............................................................................................................. 14

O'Malley v. Brierley, 477 F.2d 785 (3d Cir. 1973) .............................................. 37

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) ........ 15

Pardue v. Gray, 136 Fed. Appx. 529 (3d Cir. 2005) ....................................... 49, 50

Pearson v. Callahan, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ............................ 26

Pennhurst State Sch. & Hospital v. Halderman, 465 U.S. 89 (1984) ..................... 16

Pennsylvania House, Inc. v. Barrett, 760 F. Supp. 439 (M.D. Pa. 1991) .............. 14

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) .............................. 15

Quern v. Jordan, 440 U.S. 332 (1979) .................................................................. 16

Rabold v. "The Syndicate"-Monroe County, Pa. Charter, 2007 U.S. Dist.
   LEXIS 242 (M.D. Pa. Jan. 4, 2007) .................................................................. 37

Reedy v. Evanson, 2009 U.S. Dist. LEXIS 33319 (W.D. Pa. 2009) ...................... 35

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) ............................................ 29

Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996) .......................................... 16

Smith v. School District, 112 F. Supp. 2d 417 (E.D. Pa. 2000) ............................. 35

Stankowski v. Farley, 487 F. Supp. 2d 543 (M.D. Pa. 2007) aff'd 251 Fed.
   Appx. 743 (3d Cir. Pa., Oct. 24, 2007) ............................................................ 23

Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171
   F.3d 912 (3d Cir. 1999) cert. denied, 528 U.S. 1105 (2000) ........................... 44

Taylor v. Pilewski, 2008 U.S. Dist. LEXIS 86396 (W.D. Pa. 2008) ..................... 37

Thompson v. Burke, 556 F.2d 231 (3d Cir. 1977) ........................................... 22, 23

United States v. Turkette, 452 U.S. 576 (1981) ..................................................... 42

Villanueva v. County of Montgomery , 1994 U.S. Dist. LEXIS 10416 (E.D.
   Pa. 1994) ........................................................................................................... 33

Wallace v. Powell, 2009 U.S. Dist. LEXIS 109163 (M.D. Pa. Nov. 20,
   2009) ............................................................................................................ 22, 33

Watson v. Abington Twp., 2005 U.S. Dist. LEXIS 16117 (E.D. Pa., Aug. 5,
   2005) .................................................................................................................. 49

Will v. Mich. Department of State Police, 491 U.S. 58 (1989) ....................... 16, 20

Williams v. Consovoy, 453 F.3d 173 (3d Cir. 2006) ....................................... 22, 23

Young v. Beard, 2009 U.S. Dist. LEXIS 87249 (M.D. Pa. 2009) ......................... 30

## STATE CASES

Banyas v. Lower Bucks Hospital, 293 Pa. Super. 122, 437 A.2d 1236 (1981) ...... 35

Ellenbogen v. County of Allegheny, 479 Pa. 429, 388 A.2d 730 (Pa. 1978) ......... 17

Fife v. Great Atlantic & Pacific Tea Co., 356 Pa. 265, 267, 52 A.2d 24, 39,
    cert. denied, 332 U.S. 778 (1947) .................................................................... 48

Fitzgerald v. McCutcheon, 410 A.2d 1270 (Pa. Super. Ct. 1979) ......................... 21

Hoy v. Angelone, 456 Pa. Super. 596, 691 A.2d 476 (Pa. Super. Ct. 1997) .......... 34

Hunger v. Grand Central Sanitation, 447 Pa. Super. 575, 670 A.2d 173 (Pa.
    Super Ct. 1996) ............................................................................................... 35

Kuzel v. Krause, 658 A.2d 856 (Pa. Commw. Ct. 1995) ....................................... 35

L.J.S. v. State Ethics Commission, 744 A.2d 798 (Pa. Cmwlth. Ct. 2000) ............ 17

Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 (1970) ........................................... 35

Phillips v. Selig, 2008 Pa. Super. 244, 959 A.2d 420 (Pa. Super. Ct. 2008)
    appeal denied 600 Pa. 764, 967 A.2d 960 (Pa. 2009) ..................................... 48

## DOCKETED CASES

AFSCME District Council 87 v. Luzerne County, Case No. PERA-C-03-
    104-E ............................................................................................................... 17

## FEDERAL STATUTES

18 U.S.C. §1962 ....................................................................... 9, 39, 42, 47

18 U.S.C. §1964(c) ........................................................................... 39, 40

# STATE STATUTES

1 Pa.C.S. §2310 .......................................................................... 19

42 Pa.C.S. §8521 ........................................................................ 11

42 Pa.C.S. §8521(b) .............................................................16, 18, 20, 21, 24

42 Pa. Cons. Stat. §301 (West 1981) ..................................... 17

42 Pa. Cons. Stat. Ann. §102 (West Supp. 1999) ................. 17

Pa. Const. art. V, §1 ............................................................... 17

Pa. Const. art. V, §§1, 2 ......................................................... 17

Pa. Const. art. V, §6(c) ........................................................... 17

# MISCELLANEOUS

Restatement (Second) of Torts § 46, Comment d (1965) ....................................... 35

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY:**

On December 24, 2009, Plaintiffs Raul Clark, Bruce Clark, and Iraida Clark initiated this action against Defendant Sandra Brulo, former Chief Juvenile Probation Officer of Luzerne County, among other defendants. The Complaint arising out of the same general transactions and occurrences complained of in the consolidated matters docketed in this Honorable Court at 09-cv-0286 styled *B.W., a minor, et al. v. Powell, et al.*, *Conway, et al. v. Conahan, et al., H.T. v. Ciavarella, et al., and Humanik v. Ciavarella, et al.* The instant matter has not been consolidated with these other pending matters.

Plaintiffs allege that, in June of 2000, Defendant Ciavarella met with Defendant Powell concerning the construction of a privately-owned juvenile detention facility. (Complaint, ¶47). Defendant Powell allegedly was introduced to Defendant Robert Mericle, an alleged friend of Defendant Ciavarella. (Complaint, ¶49). Robert Mericle, through his company, Defendant Mericle Construction, Inc. allegedly agreed to build a juvenile detention facility. (Complaint, ¶50). Defendants Powell and Zappala[1] were to acquire land for the facility. (Complaint, ¶50).

---

[1] By Order dated January 22, 2010, Defendants Gregory Zappala, Western PA Child Care, and Mid-Atlantic Youth Services Corp. were dismissed from this matter, without prejudice.

Plaintiffs allege that there was no legitimate basis for the abandonment by Luzerne County of the publicly owned Luzerne County detention facility, but "in exchange for kickbacks from the Detention Facility Defendants, Defendants Conahan and Ciavarella sought to funnel Luzerne County's youths to Detention Facility Defendants' private institution." (Complaint, ¶¶54-56). Plaintiffs allege that in 2002 and continuing thereafter, Defendants Ciavarella and Conahan routinely sentenced juveniles to custodial detention to dramatically increase the number of juveniles placed in detention facilities. (Complaint, ¶¶57-59).

Plaintiffs allege that Defendants Ciavarella and Conahan systematically stripped juveniles of their constitutional rights by denying them due process and a fair hearing to accomplish their goal of placing more juveniles in detention facilities. (Complaint, ¶¶59-60). Specifically, Plaintiffs allege that Defendants Ciavarella and Conahan systematically pressured juveniles to enter guilty pleas and adjudicated cases in the absence of a plea. (Complaint, ¶62). Additionally, Plaintiffs claim that Defendants Ciavarella and Conahan adjudicated juveniles without advising the juveniles or their parents of their right to due process. Id. Defendants Ciavarella and Conahan allegedly adjudicated juveniles without informing them of the charges against them, without permitting them to call witnesses, without informing them of their privilege against self-incrimination, and

without informing them of the consequences of their decision to waive their right to a trial.  Id.

Plaintiffs claim that Defendant Brulo, former Chief Juvenile Probation Officer of Luzerne County, "watched silently as Defendants Ciavarella and Conahan's kangaroo court systemically imprisoned thousands of Luzerne County's youth." (Complaint, ¶66).[2]

Plaintiffs allege that the Luzerne County Juvenile Probation Department (hereinafter the "Department") and Defendant Brulo participated in the scheme of Conahan and Ciavarella.  (Complaint, ¶83).  Specifically, Plaintiffs allege that Defendant Brulo, at the insistence of Defendant Ciavarella and Conahan, "recommended that juveniles be detained or placed in rehabilitation facilities rather than placed on probation in order to 'legitimize' the placements made by Defendants Conahan and Ciavarella." (Complaint, ¶84).  Plaintiffs also claim that the Department, at the insistence of Conahan and Ciavarella, routinely altered recommendations to favor placement of juveniles in detention facilities at the instruction of Defendants Conahan and Ciavarella.  (Complaint, ¶85).  Plaintiffs

---

[2] Plaintiff also alleges that Defendant Brulo has plead guilty to a single count of obstruction of justice for altering official juvenile criminal records.  (Complaint, ¶¶223-224).  Plaintiff does not allege that this criminal matter involved Plaintiff's juvenile records.  The criminal information, to which a guilty plead was entered, indicates that the alteration of the document occurred in February 2009 after civil suits arising out of the transactions and occurrences referenced in the matter styled *B.W., a minor, et al.* docketed in this Honorable Court at 09-cv-0286 were filed.

allege that unnamed "members of the Department made these alterations in return for kickbacks from, among others, Defendants Conahan and Ciavarella." (Complaint, ¶86).[3]  Plaintiffs also make a general allegation that Defendant "Brulo and others routinely falsified the results of drug tests or concocted bogus probation violations in order to have children on probation placed into and/or further detained at detention facilities."  (Complaint, ¶87).

In Plaintiff Raul Clark's particular case and circumstances, he claims to have been arrested at the age of fourteen (14) for misdemeanor offenses, including violation of curfew and possession of drug paraphernalia.  (Complaint, ¶¶103,

---

[3] Plaintiffs' Complaint at paragraph 83 is unclear.  Plaintiff avers that "the Department, Ms. Brulo and others actively participated with the scheme perpetrated by Defendants Conahan and Ciavarella in return for illicit payments." It is unclear whether "in return for illicit payments" describes Conahan and Ciavarella's scheme, i.e. a scheme by which Conahan and Ciavarella received illicit payments, or whether "the Department, Ms. Brulo, and others actively participated" "in return for illicit payments."  Plaintiffs' pleading is not clarified when Plaintiff specifically pleads in the next two (2) paragraphs the manner in which Brulo allegedly "participated in the scheme", without identifying whether such participation was knowingly or unknowingly performed in furtherance of the scheme.  Plaintiffs plead in paragraph 86 of the Complaint that "the Department made these [detention recommendation] alterations in return for kickbacks from, among others, Defendants Conahan and Ciavarella," while not pleading with the same clarity that Defendant Brulo did anything in exchange for "kickbacks".

The Complaints and amendments thereto in the consolidated actions docketed at 09-cv-0286 averred that Defendants Conahan and Ciavarella never disclosed to either the parties or entities involved in court proceedings involving juveniles that a conflict of interests existed or that they had a financial relationship with Defendants Pa. Child Care, Western Pa Child Care, Defendant Powell and/or Defendant Zappala.  (Amended Master Complaint, [Doc. 134], ¶110, docket #09-cv-0286).  Defendant Brulo was subsequently voluntarily dismissed by the plaintiffs in the consolidated actions.  See Docket #09-cv-0286, [doc. 253].

4

109). Plaintiff claims that he appeared before Defendant Ciavarella, along with his parents, and a public defender, who was appointed by the Court of Common Pleas to represent Plaintiff. (Complaint, ¶¶111-113). Plaintiff was adjudicated delinquently by Defendant Ciavarella and sentenced to six months of custodial detention. (Complaint, ¶¶121, 124). Plaintiff does not allege that Defendant Brulo attended Plaintiff's hearing or was involved in the same.

Plaintiff Raul Clark alleges that after the publically owned detention facility was closed, he again appeared before Defendant Ciavarella, but without counsel, and was summarily transferred to the Lackawanna County Detention Facility. (Complaint, ¶¶132-134). Plaintiff does not allege that Defendant Brulo attended the above described appearance before Defendant Ciavarella or that she was involved in the same.

On December 16, 2002, Plaintiff claims that he again appeared before Defendant Ciavarella, who ordered Plaintiff to be transferred to "Adelphoi Treatment Facility in Allegheny County." (Complaint, ¶¶137-140). Plaintiff does not allege that Defendant Brulo attended Plaintiff's transfer hearing or was involved in the same.

In February 2003, Plaintiff Raul Clark alleges that he again appeared before Defendant Ciavarella, who sentenced him to Clearbrook Lodge. (Complaint,

¶¶147-151).   Plaintiff does not allege that Defendant Brulo attended Plaintiff's hearing or was involved in the same.

In May 2003, Plaintiff again appeared before Defendant Ciavarella, who released Plaintiff from custodial detention and placed him on probation. (Complaint, ¶157).   Plaintiff does not allege that Defendant Brulo attended Plaintiff's hearing or was involved in the same.

Plaintiff Raul Clark admits that he missed curfew, and, as a result, Defendant Ciavarella ordered that he immediately be remanded to Defendant PA Child Care, LLC (hereinafter "PACC").  (Complaint, ¶158-159).  Plaintiff claims that PACC paid Ciavarella millions of dollars to place juveniles at that facility. (Complaint,  ¶¶159,  172-173).[4]   Plaintiff  served  three  (3)  days  at  PACC. (Complaint, ¶160). Plaintiff does not allege that Defendant Brulo attended Plaintiff's probation violation hearing or was involved in the same.

In early 2004, Plaintiff claims that his probation officer, Officer Bliche, obtained a urine sample from him.  (Complaint, ¶161).  Plaintiff claims that his sample was one of dozens taken by probation officers that day.  (Complaint, ¶162). Shortly after the sample was taken, Plaintiff claims that he was advised that he failed the drug test as both PCP and methamphetamines had been found in his urine.  (Complaint, ¶163).  Plaintiff claims that he had not ingested the drugs that

---

[4] The alleged scheme involving Defendants Ciavarella and Conahan are outlined in detail in paragraphs 172-218 of Plaintiff's Complaint.

were allegedly found in his urine.  (Complaint, ¶164).  As a consequence of the test results, Defendant Ciavarella ordered Plaintiff to PACC again.  (Complaint, ¶165).

Plaintiff claims that the Department "switched urine samples and/or falsely reported the test findings in order to incarcerate Raul and to obtain more money from the Detention Facility Defendants and Raul's parents."  (Complaint, ¶166). While Plaintiff claims that the Department and Defendant Brulo routinely falsified the results of drug tests or concocted bogus probation violations, (Complaint, ¶87), Plaintiff does not allege that Defendant Brulo took Plaintiff's urine sample, ever possessed the urine sample, had access to the urine sample, contaminated or "swapped" the urine sample, falsified the test results, or was in any way involved in either the obtaining or testing of the urine sample or the decision to report the test results to Defendant Ciavarella.  Moreover, Plaintiff does not allege that Defendant Brulo attended Plaintiff's hearing related to the urine sample test results or was involved in the same in any manner.

Plaintiffs Bruce and Iraida Clark, Plaintiff's parents, claim that the Department received payments of probation expenses from parents of juveniles sent to detention facilities or placed on probation.  (Complaint, ¶88).  Plaintiff's parents also claim that as a result of the actions of the Department, Defendant Brulo, and others, the number of juveniles detained increased along with amount of payments from parents to the Department.  (Complaint, ¶89).

7

On October 27, 2009, Plaintiff Raul Clark claims that his juvenile record was expunged. (Complaint, ¶¶169, 222).

In Count I, Plaintiffs claim that their civil rights were violated in contravention of 42 U.S.C. §1983 by the Department and Defendant Brulo. (Complaint, Count I, ¶¶225-233). The allegation against the Department and Defendant Brulo is that "defendants Ciavarella and Conahan also instructed members of the Department, including Ms. Brulo, to alter their recommendation to favor placement with one of the Detention Facility Defendants." (Complaint, ¶231). Specifically, Plaintiff claims that the Department and Defendant Brulo allegedly violated Plaintiff's rights by:

> (1) recommending that Raul and other juveniles be detained or placed in rehabilitation facilities in order to 'legitimize' the placements made by Defendants Conahan and Ciavarella; (2) altering probation reports and drug tests in order to have Raul and other children on probation placed in further detention; and (3) concocting bogus probation violations to ensure that Raul and other children were placed in and/or further detained with one of the Detention Facility Defendants.

(Complaint, ¶232).

In Count II, Plaintiff alleges that the Department "adopted policies, procedures and customs that deprived juveniles of their rights under the Fifth, Sixth, Eighth and Fourteenth Amendments," (Complaint, ¶237), including "participation in the scheme by Defendants Conahan and Ciavarella to place Raul

and other children in detention facilities to deprive them of their rights to due process, a fair trial and to counsel, and to inflict cruel and unusual punishments and excessive fines upon them," (Complaint, ¶238). The Department allegedly had a policy, procedure, or custom of routinely recommending detention instead of probation for juveniles charged with minor offenses. (Complaint, ¶239). The Department allegedly ignored systemic constitutional violations taking place in the courtrooms of Defendants Conahan and Ciavarella, including the denial of the right to a fair trial, the right to counsel, and the infliction of excessive punishment. (Complaint, ¶240).

Count III of the Complaint is not addressed to the Department or Defendant Brulo. (Complaint, ¶¶245-249).

While Plaintiffs bring a RICO claim pursuant to 18 U.S.C. §1962 against various other defendants, Plaintiffs do not name the Department or Defendant Brulo as part of the "RICO Defendants." (Complaint, ¶251).[5]

Count VI appears to attempt to allege a state-law false imprisonment claim against the Department and Defendant Brulo, among others. (Complaint, ¶265-267). Plaintiffs also appear to make a claim for conspiracy in Count VI.

---

[5] Count IV of Plaintiffs' Complaint, however, lists within the heading of the count, Department and Brulo as defendants, despite not including these same defendants as part of the "RICO Defendants" at paragraph 251 of the Complaint. Plaintiffs' counsel has indicated, however, that Plaintiffs intended to file RICO claims against Defendant Brulo. Therefore, Brulo is forced to address the same in Section "J" of the instant brief.

(Complaint, ¶266).  Plaintiffs claim intentional infliction of emotional distress in "Count VIII".[6]  (Complaint, ¶269).

_____

[6] Plaintiffs' Complaint appears to contain a typographical error in that there is no Count VII.

## II.    QUESTIONS PRESENTED:

A.    WHETHER PLAINTIFFS' CLAIMS AGAINST DEFENDANT BRULO, IN HER OFFICIAL CAPACITY, SHOULD BE DISMISSED WHEN PLAINTIFFS' VOLUNTARILY DISMISSED THEIR CLAIMS AGAINST THE DEPARTMENT AND DEFENDANT BRULO, IN HER OFFICIAL CAPACITY, IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY?

Suggested Answer:  In the affirmative.

B.    WHETHER PLAINTIFFS' CLAIMS AGAINST DEFENDANT BRULO, IN HER OFFICIAL CAPACITY, FAIL TO STATE A CLAIM PURSUANT TO 42 U.S.C. §1983 WHEN DEFENDANT BRULO, IN HER OFFICIAL CAPACITY, IS NOT A "PERSON" FOR PURPOSES OF §1983?

Suggested Answer:  In the affirmative.

C.    WHETHER PLAINTIFFS' STATE LAW CLAIMS AGAINST DEFENDANT BRULO SHOULD BE DISMISSED WHEN THE DEFENDANT BRULO IS ENTITLED TO IMMUNITY PURSUANT TO 42 PA.C.S. §8521?

Suggested Answer:  In the affirmative.

D.    WHETHER PLAINTIFFS' CLAIMS AGAINST DEFENDANT BRULO, IN HER PERSONAL CAPACITY, FAIL TO STATE A CLAIM WHEN DEFENDANT BRULO IS ENTITLED TO JUDICIAL IMMUNITY OR QUASI-JUDICIAL IMMUNITY?

Suggested Answer:  In the affirmative.

E.    WHETHER PLAINTIFFS' CLAIMS AGAINST DEFENDANT BRULO, IN HER PERSONAL CAPACITY, FAIL WHEN DEFENDANT BRULO IS ENTITLED TO QUALIFIED IMMUNITY?

Suggested Answer:  In the affirmative.

F.    WHETHER PLAINTIFFS' CLAIMS AGAINST DEFENDANT BRULO FAIL WHEN PLAINTIFFS FAIL TO PLEAD THE PERSONAL INVOLVEMENT OF DEFENDANT BRULO IN ANY ALLEGED CIVIL RIGHTS VIOLATIONS?

Suggested Answer:  In the affirmative.

G.    WHETHER PLAINTIFF'S CLAIM FOR FALSE IMPRISONMENT FAILS TO STATE A CLAIM WHEN PLAINTIFF'S DETENTION WAS PURSUANT TO A FACIALLY VALID ORDER OF COURT?

Suggested Answer:  In the affirmative.

H.    WHETHER PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED WHEN DEFENDANT BRULO'S ACTION WERE NOT OUTRAGEOUS?

Suggested Answer:  In the affirmative.

I.    WHETHER PLAINTIFFS BRUCE AND IRAIDA CLARK'S CLAIMS SHOULD BE DISMISSED WHEN THEY DO NOT ASSERT A VIOLATION OF THEIR CIVIL RIGHTS OR DEFENDANT BRULO'S INVOLVEMENT IN ANY ALLEGED VIOLATION?

Suggested Answer:  In the affirmative.

J.     WHETHER   PLAINTIFFS'   RICO   CLAIMS   AGAINST
       DEFENDANT   BRULO   SHOULD   BE   DISMISSED   WHEN
       PLAINTIFFS FAILS TO STATE A RICO CLAIM?

       Suggested Answer:  In the affirmative.


K.     WHETHER PLAINTIFFS' CLAIM OF CONSPIRACY SHOULD
       BE DISMISSED WHEN PLAINTIFF FAILS TO STATE A CLAIM
       FOR CONSPIRACY AGAINST DEFENDANT BRULO?

       Suggested Answer:  In the affirmative.

## III.  ARGUMENT:

When considering a Motion to Dismiss, the Court must take all of the material allegations of the Complaint as true and construe them in a light most favorable to the plaintiff.  Pennsylvania House, Inc. v. Barrett, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  Nevertheless, conclusory allegations of law, unsupported conclusions, and unwarranted inferences should be disregarded.  Id. at 449-50 (citation omitted).

The complaint, or those portions complained of, may be dismissed where it is clear that upon proof of all the allegations, the plaintiff would be unable to prevail under any set of facts or theory of law.  The moving party bears the burden of showing that there is no possible claim upon which the plaintiff can prevail.  D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984); Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).  Nonetheless, a court is not required to give credit to "bald assertions" or "legal conclusions" contained in the complaint.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  "Although the court is generally limited in its review to the face of the complaint, it 'may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.'"  Millar v. Windsor Township, 2005 U.S.

14

Dist. LEXIS 17433, *4 (M.D. Pa. 2005) <u>quoting</u> <u>Oshiver v. Levin, Fishbein,</u>
<u>Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

The United States Supreme Court has enunciated that the factual allegations
must be enough to raise a right to relief above the speculative level, and, while a
complaint does not need detailed factual allegations, a plaintiff has the obligation
to provide the "grounds" for his "entitlement to relief," which requires more than
labels, conclusions, and a formulaic recitation of the elements of a cause of action.
<u>Bell Atlantic Corporation v. Twombly</u>, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d
929, 940 (2007); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir.
2008).

> **A.    Plaintiffs' Claim Against Defendant Brulo, In Her Official
> Capacity, Should Be Dismissed Because Plaintiffs' Voluntarily
> Dismissed Their Claims Against The Department And Defendant
> Brulo, In Her Official Capacity, Is Entitled To Eleventh
> Amendment Immunity**

On April 12, 2010, Plaintiffs filed a Notice of Voluntary Dismissal of
Defendant Luzerne County Juvenile Probation Department.  [Doc. 52].  While the
Notice of Voluntary Dismissal does not reference Defendant Brulo in her official
capacity, Defendant Brulo, in her official capacity, is the Department by another
name.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).  Therefore, any official
capacity claims against Defendant Brulo should be dismissed.

If Plaintiffs seek to impose liability upon Defendant Brulo in her official capacity, she is entitled to Eleventh Amendment immunity in any event.

The Eleventh Amendment immunizes the state from suits brought in federal court by its own citizens in addition to suits by citizens of other states.[7] Benn v. First Judicial District of Pennsylvania, 426 F.3d 233, 238 (3d Cir. Pa. 2005) citing Hans v. Louisiana, 134 U.S. 1 (1890); Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996).[8] Moreover, the Eleventh Amendment applies to sub-units of the state. Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d. Cir. Pa. 2008) citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). A plaintiff's suit may be barred by the Eleventh Amendment even though the state is not a named party to the action provided that the state is deemed to be the real party in interest. Benn, 426 F.3d at 239 citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997).

Official-capacity suits against probation officers in Pennsylvania are, in all respects other than name, suits against the unified judicial system of Pennsylvania

---

[7] While Congress may abrogate a state's Eleventh Amendment immunity pursuant to its authority under §5 of the Fourteenth Amendment, Benn v. First Judicial District of Pennsylvania, 426 F.3d 233, 238, Eleventh Amendment immunity is not lost in claims brought pursuant to 42 U.S.C. §1983 for monetary damages, Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Quern v. Jordan, 440 U.S. 332, 338 (1979).

[8] Pennsylvania has specifically withheld consent to be sued in federal court. 42 Pa.C.S. §8521(b).

16

and, hence, the Commonwealth of Pennsylvania itself. See Benn, 426 F.3d at 240.

The Third Circuit Court of Appeals has explained that:

> the Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania. Pa. Const. art. V, § 1. Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Pa. Const. art. V, §§ 1, 2, and 10. All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of "Commonwealth government" and thus are state rather than local agencies. See Pa. Const. art. V, § 6(c); 42 Pa. Cons. Stat. Ann. § 102 (West Supp. 1999); 42 Pa. Cons. Stat. § 301 (West 1981).

Benn, 426 F.3d at 240 quoting Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3d Cir. Pa. 2000); see Ellenbogen v. County of Allegheny, 479 Pa. 429, 431, n.3, 388 A.2d 730, 731, n.3 (Pa. 1978) (explaining that juvenile and adult probation officers are court employees); L.J.S. v. State Ethics Commission, 744 A.2d 798, 799 (Pa. Cmwlth. Ct. 2000) (explaining that chief probation officer is a judicial-appointment position). The very Luzerne County Probation Department personnel at issue, including Defendant Brulo, have already been determined to be court personnel, not county employees. AFSCME District Council 87 v. Luzerne County, Case No. PERA-C-03-104-E, at "Amended and Additional Findings of Fact," ¶ 25, (October 19, 2004).[9]

---

[9] The decision in AFSCME District Council 87 v. Luzerne County, Case No. PERA-C-03-104-E dated October 19, 2004 is attached hereto as Appendix A.

Probation officers, in their official capacity, are part of the unified judicial system and are arms of the state for purposes of the Eleventh Amendment. Haybarger, 551 F.3d at 201 (explaining that "Pennsylvania's judicial districts, including their probation and parole departments, are ordinarily entitled to Eleventh Amendment immunity as arms of the State").  Each court of common pleas in Pennsylvania is required to have a domestic relations section, "which shall consist of such probation officers and other staff of the court as shall be assigned thereto."  42 Pa.C.S. §961.  A common pleas court's domestic relations section "is merely a *part* of the court of common pleas for that county, and 'thus *not* a county agency.'"  Haybarger, 551 F.3d at 201 quoting Rogers v. Bucks County Domestic Relations Section, 959 F.2d 1268, 1271, n.4 (3d Cir. 1992); see also 42 Pa.C.S. §6307(a)(4) (providing as part of the "Juvenile Act" that "All files and records of the court in a proceeding under this chapter are open to inspection only by: … (4) A court and *its* probation and other officials or professional staff….") (emphasis added).  Therefore, official-capacity §1983 suits against a probation officer and suits against a probation department are barred by application of the Eleventh Amendment.  Haybarger, 551 F.3d at 198 (explaining that the Third Circuit has "held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity"); Benn, 426 F.3d at 240-41.

18

In the instant matter, Plaintiffs' claims against Defendant Brulo in her official capacity and those against the Department are nothing more than claims against the Commonwealth of Pennsylvania by another name and should be dismissed pursuant to the Eleventh Amendment. Defendant Brulo's "official actions" during the relevant time period are those of the state pursuant to her prior employment with the Department, which is an arm of the Luzerne County Court of Common Pleas, which is a state agency. Plaintiffs request only retrospective monetary relief, and Eleventh Amendment immunity is not otherwise abrogated under the circumstances and claims asserted in the instant matter. Therefore, Plaintiffs' claims against the Department and those claims against Defendant Brulo in her official capacity should be dismissed pursuant to the Eleventh Amendment.

### B. Plaintiffs' Claims Against Defendant Brulo, In Her Official Capacity, Fail To State A Claim Pursuant To 42 U.S.C. §1983 Because Defendant Brulo, In Her Official Capacity, Is Not A "Person" For Purposes Of §1983

Section 1983 provides, in relevant part, that:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. §1983.

19

The Commonwealth of Pennsylvania is not a "person" within the meaning of 42 U.S.C. §1983 and could not be sued pursuant to §1983 even if Eleventh Amendment immunity did not apply. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989). Therefore, the §1983 claims against the Department and any official capacity claims against Defendant Brulo, which are actually claims against the Commonwealth of Pennsylvania by another name,[10] should be dismissed with prejudice.

### C.    Plaintiffs' State Law Claims Against Defendant Brulo Should Be Dismissed Because Defendant Brulo Is Entitled To Immunity Pursuant To 42 Pa.C.S. §8521

To the extent that Plaintiffs pursue any state law claims against the Defendant Brulo, the Commonwealth of Pennsylvania's sovereign immunity covers Defendant Brulo while acting in the scope of her duties as a probation officer. 1 Pa.C.S. §2310; 42 Pa.C.S. §8521; 42 Pa.C.S. §8522; Frankel v. The

---

[10] Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (explaining that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself").

Disciplinary Board of the Supreme Court of Pennsylvania, 2005 U.S. Dist. LEXIS 26961, *5-6 (E.D. Pa. Nov. 8, 2005).   This Honorable Court and Pennsylvania courts have held that conduct of an employee is within the scope of employment if it is in the nature of the duties that the employee is employed to perform, occurs in the authorized space and time limits, and, at least in part, is actuated by a purpose to serve the employer.   Larsen v. State Employees' Retirement System, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008); Fitzgerald v. McCutcheon, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979).   Plaintiffs' allegations against Defendant Brulo arise solely within the scope of her duties as a probation officer for the Department, which is under the control of the Court of Common Pleas of Luzerne County.   All of Plaintiffs' allegations arise from activities taken by Defendant Brulo either at the behest of a judge of the Luzerne County Court of Common Pleas or as part of her statutorily defined job duties.[11]   Therefore, Defendant Brulo is entitled to the sovereign immunity retained by the Commonwealth, and Plaintiffs' state-law claims against Defendant Brulo should be dismissed with prejudice.

> **D.    Plaintiffs' Claims Against Defendant Brulo, In Her Personal Capacity, Fail To State A Claim Because Defendant Brulo Is Entitled To Judicial Immunity Or Quasi-Judicial Immunity**

Probation officers are entitled to absolute immunity for their actions performed in a quasi-judicial role.   Kelly v. County of Montgomery, 2008 U.S.

---

[11] 42 Pa.C.S. §6304.

Dist. LEXIS 61572, *17-19 (E.D. Pa., August 12, 2008); see also Wallace v. Powell, 2009 U.S. Dist. LEXIS 109163, *24-25 (M.D. Pa. Nov. 20, 2009) (Caputo, J.) (explaining that "common law immunities also apply to RICO and state law actions").

> Absolute immunity is available to government officials for "actions performed in a 'quasi-judicial' role." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). The determination of absolute immunity considers whether the government official performed a particular function in an adjudicatory capacity. See Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986). Adjudicatory functions "include[] activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." Kulwicki, 969 F.2d at 1463 (quoting Imbler, 424 U.S. at 430); see also Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006) ("[Absolute] immunity attaches to those who perform functions integral to the judicial process."); Hamilton, 322 F.3d at 785 ("Quasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge." (quoting Butz v. Economou, 438 U.S. 478, 513, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978))). Government officials acting in an executive capacity, such as performing administrative functions, may be afforded qualified immunity. See Kulwicki, 969 F.2d at 1463.

> "[P]robation officers . . . are entitled to quasi-judicial immunity when engaged in adjudicatory activities." Thompson v. Burke, 556 F.2d 231, 236 (3d Cir. 1977). Absolute immunity is available to "individuals who perform investigative or evaluative functions at a governmental adjudicative entity's request to assist that entity in its decision making process." Williams, 453

22

> F.3d at 178. When a probation officer acts as "an arm of
> the court," such as in preparing a recommendation to the
> court, absolute immunity shields the individual from civil
> liability under 42 U.S.C. §1983. See id.; see also
> Stankowski v. Farley, 251 Fed. Appx. 743, 2007 WL
> 3089539, at *1 (3d Cir. 2007) (finding that probation
> officer was entitled to absolute immunity in his
> preparation of a pre-sentence report because it was a
> function that assisted the judge in determining sentence).
> In this capacity, probation officers function as an arm of
> the judiciary, not as members of the executive or
> legislative branch of government. See Williams, 453 F.3d
> at 178.

Kelly, 2008 U.S. Dist. LEXIS 61572 at *17-19; Thompson v. Burke, 556 F.2d 231, 236-37 (3d Cir. Pa. 1977) (explaining that "[n]o doubt can be entertained that probation officers…are entitled to quasi-judicial immunity when engaged in adjudicatory duties") (citing cases); Stankowski v. Farley, 487 F. Supp. 2d 543, 553 (M.D. Pa. 2007) (explaining that probation officers are immune from suit for preparation of pre-sentence reports and aiding the court in making a sentencing determination) aff'd 251 Fed. Appx. 743 (3d Cir. Pa., Oct. 24, 2007) (unpublished); see Galvani v. Pennsylvania, 2008 U.S. Dist. LEXIS 89150, *19-24 (M.D. Pa. Nov. 4, 2008) (explaining that court-appointed officers or agents of the court that report recommendations to the court at the court's request are entitled to quasi-judicial immunity) aff'd 2009 U.S. App. LEXIS 10117, *5 (3d Cir. Pa. May, 11, 2009) (unpublished); see also Hughes v. Long, 242 F.3d 121, 127-128 (3d Cir. Pa. 2001) (explaining that court appointees and those assigned tasks by a court

integral to the judicial process are "arms of the court" and are entitled to immunity).

In the instant matter, Defendant Brulo is entitled to judicial or quasi-judicial immunity for all of Plaintiffs' claims. Plaintiffs' claims arise out of the duties and obligations placed on Defendant Brulo by Judges Conahan and Ciavarella or arise out of her recommendations to the Court of Common Pleas of Luzerne County in juvenile matters for use by the Court of Common Pleas of Luzerne County.[12] Plaintiffs do not allege that Defendant Brulo acted outside of the scope of her duties and obligations to the Court of Common Pleas, as mandated by that very court, but rather claim that Defendant Brulo followed the instructions, mandates, and orders of the court.

---

[12] Pennsylvania law establishes the scope of employment of a probation officer. 42 Pa.C.S. §6304. Powers and duties of a probation officers are to follow those directives imposed by the court; to make investigations, reports, and recommendations to the court; to receive and examine complaints and charges of delinquency or dependency of a child for the purpose of considering the commencement of proceedings; to supervise and assist a child placed on probation or in his protective supervision or care by order of the court or other authority of law; to make appropriate referrals to other private or public agencies of the community if their assistance appears to be needed or desirable; to take into custody and detain a child who is under his supervision or care as a delinquent or dependent child if the probation officer has reasonable cause to believe that the health or safety of the child is in imminent danger, or that he may abscond or be removed from the jurisdiction of the court, or when ordered by the court pursuant to this chapter or that he violated the conditions of his probation; and to perform all other functions designated by the Juvenile Act or by order of the court pursuant thereto. 42 Pa. C.S. §6304(a).

The scheme of Conahan and Ciavarella was allegedly furthered, generally, by Defendant Brulo recommending juveniles be placed in rehabilitation facilities and altering recommendations to favor placement, "at the instruction of Defendants Conahan and Ciavarella."[13]   These alleged actions fall squarely within Brulo's duties as a probation officer.

Plaintiff does not allege that Defendant Brulo attended any of *his* hearings before Defendant Ciavarella or that Defendant Brulo recommended *his* placement at a detention facility.  In fact, other than broad allegations, Plaintiff does not aver how Defendant Brulo was personally involved with his adjudications and treatment at the hands of Defendant Ciavarella.

 Defendant Brulo's actions, if any, concerning Plaintiff related to directives made by Defendant Ciavarella or Defendant Conahan, and Defendant Brulo is entitled to quasi-judicial immunity as she was acting as an arm of the court to perform the court's will at the court's order.

Plaintiffs' claims relate to Defendant Brulo's obligations arising out of her adjudicatory work for the court.  These allegations include: conducting juvenile court hearings concerning Plaintiff without assistance of counsel and without knowing and intelligent waivers of the right to counsel;[14] violating Plaintiff's rights

---

[13] (Complaint, ¶¶85, 231).

[14] Plaintiff Raul Clark, however, admits to having counsel, at least, during his initial juvenile delinquency adjudication.

to appear before an impartial tribunal and have the opportunity to be heard; recommending detention, when detention was not appropriate; and adjudicating juveniles delinquently through involuntary guilty pleas.[15]  All of these actions are adjudicatory in nature or arise out of Brulo's activities as an arm of the court. Therefore, Defendant Brulo is entitled to quasi-judicial immunity for her adjudicatory actions, and Plaintiffs' claims against her should be dismissed with prejudice.

### E.    Plaintiffs' Claims Against Defendant Brulo, In Her Personal Capacity, Fail Because Defendant Brulo Is Entitled To Qualified Immunity

The qualified immunity determination turns on the objective legal reasonableness of a government official's action as assessed in light of legal rules clearly established at the time the action is taken. <u>Pearson v. Callahan</u>, 129 S. Ct. 808,  815, 172 L. Ed. 2d 565, 573 (2009).  The protection of qualified immunity applies irrespective of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  <u>Pearson</u>, 129 S. Ct. at  815, 172 L. Ed. 2d at 573.  The Supreme Court has clearly indicated

---

[15] Notably, many, if not all, of the allegations of Plaintiffs involve operations that are left to the sole authority, wisdom, and/or discretion of the juvenile court judge or are mandatory requirements of the juvenile judge, over which, probation officers, include Defendant Brulo, had no authority or ability to alter, challenge, overrule, or appeal.  These issues are address in more detail in section "E" of the instant brief related to qualified immunity.

that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." Id. quoting Anderson v. Creighton, 483 U.S. 635, 640, n. 2 (1987).

The linchpin of Plaintiffs' case against Defendant Brulo is that it was the responsibility of the Chief Probation Officer, Brulo, to ensure that juveniles were afforded the right to counsel, to ensure an impartial tribunal, and to ensure that probation department recommendations were followed by the court or not influenced or dictated by the court, i.e. then judge Defendant Ciavarella. There is no legal basis for such a claim.

Statewide Rules of Juvenile Procedure adopted in 2005, Pa.R.J.C.P. 101, cover all delinquency proceedings across the Commonwealth, suspending existing local customs and procedures that did not comport with statewide rules. See Pa.R.J.C.P. 100, 121. The rules contain specific provisions regarding the right to counsel and require that juveniles be informed of their right to counsel *by the court* and include provisions for appointing counsel to those who cannot otherwise afford to hire an attorney. Pa.R.J.C.P. 151. The Rules provide that the right to counsel cannot be waived, unless *the court* conducts a formal colloquy with the child, on the record, informing the child and guardian of the right to an attorney. Pa.R.J.C.P. 152. Given these rules, the probation staff, including Defendant Brulo, could

hardly be held to be aware that it was *their* responsibility to ensure such rights, if they had any such duty at all.

Defendant Brulo's research has not uncovered any judicial decisions that hold probation officers directly responsible for failures of the court to take such mandated action or that juveniles' rights are violated *by the probation officer* if such action is not taken. Furthermore, Defendant Brulo's research has not found any judicial decision that impose upon probation officers the requirement to question *and overrule* the court's actions regarding appointment of counsel or insuring that a proper colloquy concerning the right to counsel occurs, accepting or declining probation department recommendations, instructions on how to make or what type of recommendations are appropriate for certain cases, or ensuring that the court is an impartial tribunal. Parenthetically, the court has no obligation to consider, much less follow, a probation officer's *recommendation* at the dispositional phase as a probation officer is simply an arm of the Court, without autonomy or authority to determine or order juvenile placements. The rights that Plaintiff claims Defendant Brulo violated simply are not and were not clearly established rights that a probation officer was required to protect or insure at any relevant time. Therefore, Defendant Brulo respectfully requests that this Honorable Court grant Defendant Brulo qualified immunity and dismiss Plaintiffs' claim against her with prejudice.

28

**F.    Plaintiffs' Claims Against Defendant Brulo Fail Because Plaintiffs Fail To Plead The Personal Involvement Of Defendant Brulo In Any Alleged Civil Rights Violations**

In order for a plaintiff to plead a 42 U.S.C. §1983 claim, the plaintiff must plead that each defendant participated in violating the plaintiff's rights or directed others to violate them and such claims must be made with appropriate particularity. Cortlessa v. County of Chester, 2005 U.S. Dist. LEXIS 25013, *12, 30 (E.D. Pa. 2005); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). "Any defendant in a §1983 civil rights action must have personal involvement in the alleged wrongs.... Liability cannot be predicated solely on the doctrine of respondeat superior." Kretchmar v. Bachtle, 2005 U.S. Dist. LEXIS 11136, *7 (E.D. Pa. 2005) citing Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); Lindsay v. Dunleavy, 177 F. Supp. 2d 398, 403-04 (E.D. Pa. 2001). While prior case law permitted supervisor liability for the wrongdoing of subordinates, if the supervisor had actual knowledge and acquiesced in the acts, such attenuated liability was disapproved recently by the Supreme Court.

> In a §1983 suit...— where masters do not answer for the torts of their servants – the term 'supervisor liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.... *[P]urpose rather than knowledge is required to impose*...liability....

29

Young v. Beard, 2009 U.S. Dist. LEXIS 87249, *10-11 (M.D. Pa. 2009) quoting

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009);  Brickell

v. Clinton County Prison Board, 2009 U.S. Dist. LEXIS 82399, *10-12 (M.D. Pa.

September 10, 2009) (analyzing Ashcroft v. Iqbal in prisoner's state-created-

danger claim and claim for supervisory liability, but ultimately dismissing

supervisor liability claims because plaintiff failed to plead any relevant allegations

against supervisor).

The scheme of Conahan and Ciavarella was allegedly furthered, generally,

by Defendant Brulo recommending juveniles be placed in rehabilitation facilities

and altering recommendations to favor placement, "at the instruction of Defendants

Conahan and Ciavarella."[16]  In other words, Defendants Conahan and Ciavarella

ordered Defendant Brulo to take certain adjudicatory actions.  Plaintiff also claims

that Defendant Brulo, *generally* and *routinely*, concocted bogus probation

violations to maintain juvenile placements in detention facilities and falsified drug

tests.

Plaintiff, however, does not allege that Defendant Brulo attended any of *his*

hearings before Defendant Ciavarella, that Defendant Brulo was *his* probation

---

[16] Complaint, ¶85.

officer, that Defendant Brulo recommended that *he* be detained at a detention facility, or that Defendant Brulo took any action directly involving *Plaintiff*.[17]

Regarding alleged "concocted bogus probation violations," Plaintiff's only plead "example" is his *admitted* curfew violation[18] that resulted in Plaintiff being remanded to PACC.[19]  Plaintiff, again, fails to alleged that Defendant Brulo took any action that resulted in Plaintiff's remand to PACC for the violation.  Plaintiff does not plead that Defendant Brulo was the individual that charged Plaintiff with the probation violation, and Plaintiff utterly fails to plead that Defendant Brulo had any involvement, at all, in his remand to PACC.

 Regarding the allegation that Defendant Brulo falsified drug tests,  Plaintiff alleges that it was probation officer Bliche who obtained a urine sample from him, not Defendant Brulo.  Plaintiff claims that he should not have tested positive for drugs and claims that he should not have been returned to PACC again after failing his drug test.[20]  Plaintiff, however, concludes that "the *Department* switched urine samples and/or falsely reported the test findings…."[21]  As Defendant Brulo was the Chief Juvenile Probation Officer for Luzerne County, Plaintiff appears to claim that Defendant Brulo, in her supervisory capacity, is responsible for the allegedly

---

[17] Complaint, ¶109-169.

[18] Complaint, ¶158.

[19] Complaint, ¶¶159-160.

[20] Unsurprisingly, Plaintiff admits that he initially was charged with possession of drug paraphernalia.  (Complaint, ¶109).

[21] Complaint, ¶166.

corrupted urine sample or test results.  Plaintiff, however, does not allege that Defendant Brulo personally switched the urine sample, ordered anyone to switch the samples, took any action with regard to the urine sample, or even knew of the alleged urine sample, let alone falsified any test results.[22]

In the instant case, Plaintiff fails to state a claim against Defendant Brulo in her personal capacity.  Plaintiff utterly fails to allege that Defendant Brulo, personally, took any action that allegedly violated Plaintiff's rights.  Therefore, Plaintiff's §1983 claims against Defendant Brulo should be dismissed with prejudice.

### G. Plaintiff's Claim For False Imprisonment Fails To State A Claim Because Plaintiff's Detention Was Pursuant To A Facially Valid Order Of Court

In order to state a claim for false imprisonment, a plaintiff must establish the detention of a person and the unlawfulness of such detention.  <u>Kokinda v. Breiner</u>, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008).

Plaintiff's allegations of detention all stem from facially valid orders of the Count of Common Pleas of Luzerne County.

---

[22] The general averment in Plaintiff's Complaint at Count I, paragraph 232, which contains allegations against the Department and/or Defendant Brulo, concerns not only Plaintiff Raul Clark, but "other children on probation".  Plaintiff's factual averments related specifically to him, however, i.e. paragraphs 161-166, do not mention Defendant Brulo as being involved with Plaintiff's urine sample or drug test.  Given Plaintiff's two-hundred and sixty-nine (269) paragraph, eight (8) count complaint, he was certainly capable of pleading the requisite, personal involvement of Defendant Brulo if such could be made within the requirements of Rule 11.

Defendant Brulo incorporates her argument related to quasi-judicial immunity as set forth in section "D" of the instant brief. Furthermore, "courts have consistently held that officials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order." Villanueva v. County of Montgomery, 1994 U.S. Dist. LEXIS 10416, *7 (E.D. Pa. 1994) (granting absolute, quasi-judicial immunity to sheriff who executed a facially valid court order calling for the arrest of plaintiff); Kelly v. County of Montgomery, 2008 U.S. Dist. LEXIS 61572, *4-5 (E.D. Pa. 2008) (granting quasi-judicial immunity to probation officers who arrested plaintiff pursuant to a bench warrant); Gigliotti v. Redevelopment Authority, 362 F. Supp. 764, 766 (W.D. Pa. 1973), aff'd, 492 F.2d 1238 (3d Cir. 1974) (holding sheriff was entitled to judicial immunity when sheriff was "merely acting pursuant to direction of the court"); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir. 1969) (explaining that "[i]n addition to the recognized immunity enjoyed by judicial and quasijudicial officers…, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit," and such immunity has been specifically recognized with respect to law enforcement officers acting pursuant to a court's directive); Wallace v. Powell, 2009 U.S. Dist. LEXIS 109163, *47 (M.D. Pa. Nov. 20, 2009) (explaining that action taken pursuant to a facially valid court order receives absolute immunity).

Moreover, as argued in section "F" of the instant brief, Plaintiff also fails to allege Defendant Brulo's personal involvement in his detention.

In the instant matter, Plaintiff fails to state a false imprisonment claim. Plaintiff fails to allege that Defendant Brulo detained him, imprisoned him, or, frankly, took any action with respect to him. To the extent that Defendant Brulo did detain Plaintiff, any such detention was pursuant to a facially valid court order or directive, for which, Defendant Brulo receives immunity. Plaintiff Raul Clark specifically pleads that it was pursuant to Defendant Ciavarella's orders that he was sentenced and/or detained. (Complaint, ¶¶124, 132-134, 137-140, 147-151, 155-157, 159, 165). Therefore, Plaintiff's claim for false imprisonment should be dismissed with prejudice.

### H.    Plaintiffs' Claim For Intentional Infliction Of Emotional Distress Should Be Dismissed Because Defendant Brulo's Actions Were Not Outrageous

Pursuant to Pennsylvania law, a claim of intentional infliction of emotional distress requires that: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Hoy v. Angelone, 456 Pa. Super. 596, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). Courts "[allow] recovery only in very egregious cases." Hoy, 691 A.2d at 482.

34

It is for this Court to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute "outrageousness" as a matter of law. See Kuzel v. Krause, 658 A.2d 856, 860 (Pa. Commw. 1995); Corbett v. Morgenstern, 934 F. Supp. 680, 684 (E.D. Pa. 1996).

Liability for intentional infliction of emotional distress "has been found only where . . . the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'" Hunger v. Grand Central Sanitation, 447 Pa. Super. 575, 584, 670 A.2d 173 (1996) (applying the Restatement (Second) of Torts § 46, Comment d (1965)).  Pennsylvania courts have found intentional infliction of emotional distress only where the conduct at issue has been "atrocious" and "utterly intolerable in a civilized community." Banyas v. Lower Bucks Hosp., 293 Pa. Super. 122, 437 A.2d 1236 (1981)). They have recognized that tort, for example, where hospital employees gave false reports so that a person was indicted for homicide, see Banyas, 437 A.2d at 1239, where the defendant sexually harassed his employee and also forbade her from speaking with others, followed her at work, and withheld necessary information from her, Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307, 311 (M.D. Pa.1988), and where the defendant's car hit a child, defendant buried him on the side of the road, and the parents discovered the body only months afterwards, see Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 (1970).

Smith v. School Dist., 112 F. Supp. 2d 417, 427-28 (E.D. Pa. 2000); Reedy v. Evanson, 2009 U.S. Dist. LEXIS 33319, *76 (W.D. Pa. 2009) (explaining that "the proposition is well established" that "the arresting and imprisoning of Plaintiff

does not rise to the level of conduct that is so outrageous in character, or so extreme in degree, as to support a claim for intentional infliction of emotional distress") (citing cases); <u>Mastromatteo v. Simock</u>, 866 F. Supp. 853 (E.D. Pa. 1994) (dismissing claim for intentional infliction of emotional distress where officer allegedly "concocted the facts" to support arrest and imprisonment of plaintiff, noting that said conduct, if proven, would be deplorable, it is not sufficient to support a claim of intentional infliction of emotional distress).

In the instant matter, Plaintiffs fail to state a claim for intentional infliction of emotional distress. Significantly, the allegations against Defendant Conahan, Ciavarella, and the Detention Facility Defendants and the alleged scheme among them does not, by Plaintiffs' limited allegations against Brulo, appear to extend to Defendant Brulo. In fact, other than general averments concerning "other children", Plaintiffs do not plead any particular action by Defendant Brulo taken against Plaintiffs. Even if Defendant Brulo had "concocted bogus probation violations," such conduct is not the type of outrageous conduct required to support a claim for intentional infliction of emotional distress. See <u>Mastromatteo</u>, 866 F. Supp. at 857-59. Therefore, Plaintiffs' state-law claim for intentional infliction of emotional distress should be dismissed with prejudice.

I.    **Plaintiffs Bruce And Iraida Clark's Claims Should Be Dismissed Because They Do Not Assert A Violation Of Their Civil Rights Or Defendant Brulo's Involvement In Any Alleged Violations**

Generally, a plaintiff may only assert his or her own constitutional rights, privileges, and immunities and cannot seek to recover for the violation of another's rights. O'Malley v. Brierley, 477 F.2d 785, 789 (3d Cir. 1973); Rabold v. "The Syndicate"-Monroe County, Pa. Charter, 2007 U.S. Dist. LEXIS 242, *2-5 (M.D. Pa. Jan. 4, 2007) (Caputo, J.); Taylor v. Pilewski, 2008 U.S. Dist. LEXIS 86396, *7 (W.D. Pa. 2008) (citing cases); Ginter v. Skahill, 2006 U.S. Dist. LEXIS 77038, *23 (E.D. Pa. 2006) aff'd 298 Fed. Appx. 161 (3d Cir. Oct. 28, 2008).

In the instant matter, Plaintiff Bruce and Iraida Clark cannot recover for the alleged violations of Plaintiff Raul Clark's civil rights, especially where, as here, Raul Clark is an adult.[23]  Therefore, all of Bruce and Iraida Clark's claims pursuant to §1983 should be dismissed with prejudice as they are all derivative of and arise out of the alleged violation of the civil rights of Raul Clark.

J.    **Plaintiffs' RICO Claims Against Defendant Brulo Should Be Dismissed Because Plaintiffs Fails To State A RICO Claim**

Plaintiffs allege that "Defendants Conahan, Ciavarella, Mr. Powell, PACC, WPACC, Mr. Mericle, Mericle Construction, Mr. Zappala, Pinnacle, Mrs. Conahan, Mrs. Ciavarella, Beverage, Vision, MAYS and Powell Law Group (the

---

[23] Complaint, ¶1.

"RICO Defendants")" violated 18 U.S.C. §1962(c) and §1962(d).[24]    Notably

missing from this group of defendants specifically named are Defendants Brulo

and the Department.[25]

Plaintiffs Bruce and Iraida Clark claim that the RICO Defendants' activities

were part of their ongoing business, acting through an association of individuals,

partnerships, and corporations, and "organized in a consensual decision-making

manner."[26]    Plaintiffs claim that the association was "joined in [the] purpose of

conspiring to commit honest services fraud," and the "association employed a

number of schemes in an attempt to hide the income they received."[27]

Plaintiffs claim that between November 2002 and 2005, Bruce and Iraida

Clark paid $3,837.50 to Luzerne County to pay for Plaintiff Raul Clark's

incarceration and probation.[28] Plaintiffs claim that the unnamed, alleged RICO

enterprise constituted a continuing threat to the property of Plaintiffs Bruce and

Iraida Clark and resulted in the garnishment of their wages to pay for the alleged

wrongful incarceration of Raul Clark.[29]    Raul Clark claims to have suffered

---

[24] Complaint, ¶¶251, 262; Count V (Conspiracy to Violate RICO).

[25] Plaintiffs, however, did names these Defendants in the caption of Count IV drawing into question whether Defendants Brulo and the Department are alleged to have violated RICO.  Counsel for the Clark Plaintiffs have indicated to counsel for Brulo that they intended to bring RICO claims against Brulo.

[26] Complaint, ¶¶256-257, 259.

[27]  Complaint, ¶¶257-58.

[28] Complaint, ¶167.

[29] Complaint, ¶¶256, 261.

emotional distress and unspecified "financial harm" as a result of the actions of Defendants.[30]

The relevant sections of §1962 provide that:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §1962(c) and (d).

RICO provides civil remedies for,

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 U.S.C. §1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, ....

18 U.S.C. §1964(c).

In the instant matter, Plaintiffs fail to state any RICO claims pursuant to §1962(c) and (d) because: (1) Plaintiff Raul Clark fails to plead injury to his business or property; (2) the RICO "persons" and the alleged RICO "enterprise" are identical; (3) the alleged RICO violations are not the proximate cause of

---

[30] Complaint, ¶170.

Plaintiffs alleged injury to property; and (4) the RICO conspiracy claim fails to plead any substantive RICO violation.

1.    <u>Plaintiff Raul Clark Fails To Plead Injury To His Business Or Property</u>:

In order to allege a RICO claim and in order to have standing to assert such a claim, a plaintiff must allege injury to his business or property by reason of a violation of §1962.  18 U.S.C. §1964(c); <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482-83 (3d Cir. 2000).

In the instant matter, Plaintiff Raul Clark fails to allege that his business or property was injured.  The closest that Plaintiff Raul Clark comes to alleging injury to his business or property is Raul Clark's claim that he suffered emotional distress and unspecified "financial harm."  Emotional distress is not injury to business or property for purposes of RICO.  <u>Magnum v. Archdiocese of Phila.</u>, 253 Fed. Appx. 224, 226-27 (3d Cir. 2007) (explaining that "[w]e have held that 'physical or emotional harm to a *person*' is not 'property' under civil RICO") (emphasis in original). <u>See</u> <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 918 (3d Cir. 1991). Similarly, losses which 'flow' from personal injuries are not 'property' under RICO.  <u>See</u> <u>Evans v. City of Chicago</u>, 434 F.3d 916, 930-31 (7th Cir. 2006) (explaining that lost earnings on account of personal injury insufficient to satisfy §1964(c)'s injury to "business or property" requirement); <u>Frey v. Maloney</u>, 476 F. Supp. 2d 141, 161 (D. Conn. 2007) (explaining that "to state a claim under RICO,

a plaintiff 'must allege facts demonstrating both that plaintiff's injury is to his business or property--and not physical, emotional or reputational harm or any economic aspect of such harm,' and damages arising from such personal injuries are not recoverable under RICO").  Likewise, Plaintiff Raul Clark's unspecified "financial harm" does not satisfy the requirements of §1964(c) as it is neither, without more definition, injury to business nor injury to property.  Furthermore, Raul Clark's legal conclusion that he suffered "financial harm" does not rise above the speculation level that Plaintiff has sustained injury to his business or property for purposes of standing to pursue a RICO claim.[31]  Therefore, Plaintiff Raul Clark does not have standing to bring a RICO action against Defendant Brulo, and the RICO claim should be dismissed against Defendant Brulo with prejudice.

2.     The RICO "Persons" And The Alleged RICO "Enterprise" Are Identical

The relevant section of §1962 provides that:

> (c) It shall be unlawful for <u>any person</u> employed by or associated with <u>any enterprise</u> engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[31] Plaintiffs obviously knew how to plead property damage as they specifically plead that Plaintiffs Bruce and Iraida Clark sustained damages in the precise amount of $3,837.50.  (Complaint, ¶167).  Plaintiffs make no similar claim with respect to Plaintiff Raul Clark.

18 U.S.C. §1962(c).

Pursuant to §1962(c), two (2) distinct entities must be alleged to exist: (1) a person and (2) an enterprise that is not the same as the person by another name. <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158 (2001).

In the instant matter, Plaintiffs fail to establish a RICO claim because that the alleged "persons" are no different than the alleged "enterprise." Plaintiffs claim that the "persons" are the "RICO Defendants," which consist of defendants Conahan, Ciavarella, Mr. Powell, PACC, WPACC, Mr. Mericle, Mericle Construction, Vision, MAYS, Powell Law Group, and Defendant Sandra Brulo.[32] Plaintiffs claim that the "enterprise" is "the RICO Defendants," who engaged in a "pattern of racketeering activities."[33] Plaintiffs also claim that the RICO Defendants were the enterprise, an alleged association-in-fact.[34] Plaintiffs do not distinguish between the §1962(c) "persons" and the "enterprise," but rather equate the two as one-in-the-same. Therefore, Plaintiffs RICO claim should be dismissed with prejudice.

Furthermore, Plaintiffs are required to plead that the enterprise is separate and apart from the pattern of racketeering activities. <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981) (explaining that "[t]he 'enterprise' is not the 'pattern of

---

[32] Complaint, ¶251; caption of Count IV.
[33] Complaint, ¶¶252-53.
[34] Complaint, ¶260.

racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages").  Here, Plaintiffs fail to plead that the "enterprise" is separate from the "persons" and also fails to allege that the "enterprise" is separate from the alleged "pattern of racketeering."  See 300 Broadway v. Martin Friedman Associates, P.C., 2009 U.S. Dist. LEXIS 95069, *16-17 (D.N.J. Oct. 13, 2009).  Therefore, Plaintiffs' RICO claim should be dismissed with prejudice.

> 3.    The Alleged RICO Violations Are Not The Proximate Cause Of Plaintiffs Alleged Injury To Property

In order to state a RICO claim pursuant to §1964(c), the alleged RICO violation must be the proximate cause of the plaintiff's injuries.  Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 989-91, 175 L. Ed. 2d 943, 951-54 (2010) citing v. Ideal Steel Supply Corp., 547 U.S. 451, 460-61 (2006).  "[A] plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.' … A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  Hemi Group, LLC, 130 S. Ct. at 989, 175 L. Ed. 2d at 951.  A plaintiff "cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct."  Hemi Group, LLC, 130 S. Ct. at 991, 175 L. Ed. 2d at 953.  The compensable RICO injury must flow from the violation

of a predicate act under RICO.  Hemi Group, LLC, 130 S. Ct. at 991, 175 L. Ed. 2d at 954.

Proximate cause for purposes of a RICO claim is examined by considering the directness of the injury, the difficulty in apportioning damages, and the prospect that more immediate victims can be expected to pursue their own claims. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 932-33 (3d Cir. 1999) cert. denied, 528 U.S. 1105 (2000).  Any theory of liability that a plaintiff pursues under RICO must not require the court to look beyond the first step in the causal chain.  Hemi Group, LLC, 130 S. Ct. at 989, 175 L. Ed. 2d at 951; v. Ideal Steel Supply Corp., 547 U.S. 451 (2006).

In the instant case, Plaintiffs cannot establish that the alleged RICO violations were the proximate cause of their injuries.  The alleged harm suffered by Plaintiffs, the payment of $3,837.50 to Luzerne County to pay for Plaintiff Raul Clark's incarceration and probation, is too remote to support a RICO claim. Plaintiffs claim that the RICO predicate acts included wire and mail fraud and honest services fraud.  Neither the wire and mail fraud nor the honest services fraud that alleged caused Plaintiffs to pay the $3,837.50 to Luzerne County was proximately caused by those predicate acts.

The only averments that Plaintiffs make concerning Plaintiff Raul Clark's placement at one of the defendant detention facilities, which is named as a RICO

defendant, contains an admission by Plaintiff Raul Clark that he was guilty, which resulted in Raul Clark being placed in detention. Plaintiff Raul Clark admits that he missed curfew, and, as a result, Defendant Ciavarella ordered that he immediately be remanded to Defendant PACC.[35] Plaintiff claims that he served three (3) days at PACC.[36] The alleged honest services fraud, an allegation that is directed toward Ciavarella and Conahan, and to an even lesser degree, the allegations of mail and wire fraud, have no direct causal relationship with Plaintiff Bruce and Iraida Clark making payment for the detention of their son, Plaintiff Raul Clark, when their son admitted to having engaged in an unlawful activity. Whether Raul Clark was placed at PACC or some other facility, Plaintiff Bruce and Iraida Clark would have been responsible for and have suffered some monetary loss because of Raul Clark subsequent detention costs, regardless of location. In other words, the alleged monetary loss suffered by Bruce and Iraida Clark was not caused by defendants, but by Raul Clark's admitted curfew violation.

Moreover, to demonstrate that the predicate acts, principally the honest services fraud, proximately caused Plaintiffs damages, Plaintiffs would have to prove an enormously speculative and attenuate chain of causation, such that: (a) Raul Clark would not have been placed at PACC, but for the predicate acts, even

---

[35] Complaint, ¶158-159.
[36] Complaint, ¶160.

though he admitted to the curfew violation; (b) Raul Clark would not have been placed at all, despite his admission of guilt; (c) the cost of placing Raul Clark at PACC was more than if his placement was elsewhere; and (d) Raul Clark would have been placed for less than the three (3) days of detention that he received, but for the predicate acts. Plaintiffs' claim of property damage is not the causally direct, "first step" following the alleged predicate acts.

Furthermore, more appropriate and directly effected entities have taken action to enforce the law and seek redress for the alleged harm caused by the alleged predicate acts. The "victims" of the alleged scheme of Conahan and Ciavarella was the public and Commonwealth of Pennsylvania, not specifically Plaintiffs. In response, to the alleged scheme, the federal government has acted, and both Conahan and Ciavarella have criminal charges pending against them for the alleged predicate acts, see criminal dockets 3:09-cr-00028; 3:09-cr-00272. Second, the Supreme Court of Pennsylvania, through the exercise of its King's Bench jurisdiction, has taken actions favorable to the affected juveniles as a result of the allegations against Conahan and Ciavarella. See In re: Expungement of Juvenile Records, docket no. 81 mm 2008, Supreme Court of Pennsylvania. Third, the executive and legislative branches of government have acted by creating the Interbranch Commission on Juvenile Justice to study the problem caused by

Conahan and Ciavarella and to recommend changes to prevent similar situations in the future.

Therefore, Plaintiffs cannot establish the necessary proximate causation to state a claim pursuant to RICO as their claims are too remote from the predicate acts to be actionable and to speculative to be enforceable. Therefore, Plaintiffs RICO claims against Defendant Sandra Brulo should be dismissed with prejudice.

    4.     <u>The RICO Conspiracy Claim Fails As No Substantive RICO Violation Exists</u>

The relevant sections of §1962 provide that:

    (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §1962(d).

In the instant matter, as Plaintiffs have failed to establish any violation of §1962(c), the conspiracy claim pursuant to §1962(d) fails as a matter of course.

Therefore, Plaintiffs' RICO claim should be dismissed with prejudice.

**K.    Plaintiffs' Claim Of Conspiracy Should Be Dismissed**

The alleged conspiracy between Defendants Conahan and Ciavarella and the Detention Facility Defendants is addressed, at length, in paragraphs 172-218 of Plaintiffs' Complaint. Significantly, Defendant Brulo's name does not appear

anywhere in the above referenced allegations. Plaintiffs plead no facts that establish any conspiratorial relationship between Defendant Brulo and the Detention Facility Defendants apart from bare legal conclusions and generalizations. Plaintiffs, however, do couch their conspiracy claim against Defendant Brulo in terms of a conspiracy with the judicial defendants, Conahan and Ciavarella. Defendant Brulo and her fellow probation officers, however, take their direction and receive their authority to act from the very individuals that Plaintiffs now claim that they conspired with in violation of Plaintiffs' rights. Plaintiffs' allegation is that Defendant Brulo, "at the instruction of Defendants Conahan and Ciavarella," recommended detentions and altered placement recommendations.[37]

It has long been held that "[t]he mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." Phillips v. Selig, 2008 Pa. Super 244, 959 A.2d 420, 437 (Pa. Super. Ct. 2008) appeal denied 600 Pa. 764, 967 A.2d 960 (Pa. 2009) quoting Fife v. Great Atlantic & Pacific Tea Co., 356 Pa. 265, 267, 52 A.2d 24, 39, cert. denied, 332 U.S. 778 (1947). Likewise, the mere fact that a subordinate does what is commanded of her by a superior does not, by itself, establish that the subordinate conspired with the superior in furtherance of some ulterior scheme.

---

[37] Complaint, ¶85.

Plaintiffs' conspiracy allegation is boot-strapping of the highest order, not actionable, and akin to claiming a *servant* is liable for the acts of his *master*, or, by necessity, a subordinate is always "conspiring" with a superior every time an order is followed. Furthermore, Plaintiffs' claims of conspiracy involve allegations of an intra-corporate conspiracy, i.e. a conspiracy within the judiciary itself, which is not actionable. See Brominsky v. County of Luzerne, 289 F. Supp. 2d 591, 595 (M.D. Pa. 2003); Watson v. Abington Twp., 2005 U.S. Dist. LEXIS 16117, *19-20 (E.D. Pa., Aug. 5, 2005).

Moreover, apart from bald accusations, Plaintiffs plead no *facts* in support of any alleged conspiracy between any of the defendants *and Defendant Brulo*. A conspiracy claim fails if it does not allege what the alleged conspiracy concerned, its object, any actions taken in furtherance of the conspiracy, and the period of the conspiracy. Grisby v. Kane, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003); Jean-Pierre v. Bop, 2008 U.S. Dist. LEXIS 22270, *11 (M.D. Pa. 2008). Plaintiffs fail to alleged a conspiracy *involving Defendant Brulo*.

Additionally, in order for a plaintiff to maintain a cause of action for civil conspiracy, a separate, underlying tort must exist as a predicate for liability. Pardue v. Gray, 136 Fed. Appx. 529, 533 (3d Cir. 2005); Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. Pa. 2000). A plaintiff cannot

sue for conspiracy to engage in conduct that would not be actionable against an individual defendant. Pardue, 136 Fed. Appx. at 533.

Most importantly, however, if a party is immune from §1983 liability for her acts by virtue of those acts' function in the judicial process, that individual is immune from Section 1983 liability for conspiring to do those acts. McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992) (Alito, J.). Therefore, Defendant Brulo respectfully requests that this Honorable Court dismiss Plaintiffs' conspiracy claim against Defendant Brulo with prejudice.

## IV.    CONCLUSION:

For the foregoing reasons, Defendant Sandra Brulo respectfully requests that this Honorable Court grant her Motion to Dismiss, and requests that this Honorable Court dismiss Plaintiffs' claims against Defendant Sandra Brulo with prejudice.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By:  s/Scott D. McCarroll
Scott D. McCarroll, Esquire
Attorney I.D. No. 92985
P.O. Box 999
305 N. Front Street
Harrisburg, PA  17108-0999
(717)237-7131

Date:  April 30, 2010

**IN THE MIDDLE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAUL CLARK, BRUCE CLARK and | : | |
| IRAIDA CLARK, | : | |
|       Plaintiffs | : | 3:09-CV-02535-ARC |
| | : | |
|     v. | : | CIVIL ACTION |
| | : | |
| MICHAEL T. CONAHAN, et al. | : | |
|       Defendants | : | |

## <u>CERTIFICATE OF WORD COUNT</u>

I, Scott D. McCarroll, Esquire, certify that the number of words in the Brief,

pursuant to the word count feature of Microsoft Word, totals 11,240.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By: _s/April 30, 2010_____
     Scott D. McCarroll, Esquire
     Attorney I.D. No. 92985
     P.O. Box 999
     305 N. Front Street
     Harrisburg, PA  17108-0999
     (717)237-7131

Date:  April 30, 2010

## <u>CERTIFICATE OF SERVICE</u>

I, Scott D. McCarroll, Esquire of the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the attached document(s) was served upon all counsel of record via electronic filing and unrepresented parties as indicated on the date set forth below:

Alison T. Dante          adante@morganlewis.com

Bernard M Schneider      bmschn@aol.com

Bridget E. Montgomey     bmontgomery@eckertseamans.com

David J. Schertz         dschertz@eckertseamans.com

Deborah Hart Simon       dhs@elliottgreenleaf.com

Edward P. McNelis        mcnelislaw@intergrafix.net

Jessica Richman Birk     jbirk@mmwr.com

John G. Dean             jgd@elliottgreenleaf.com

Joseph B.G. Fay          jfay@morganlewis.com

Kimberly D. Borland      kborland@borlandandborland.com

Mark B. Sheppard         msheppard@mmwr.com

Nicole F Bednarek        nfbesq@aol.com

Robert J. Powell         rpowell@powell-group.com

Ruth S. Borland          rborland@borlandandborland.com

Stephen D. Rhoades          rhoadeslegal@hotmail.com

Timothy T. Myers            ttm@elliottgreenleaf.com


**By First Class U.S. Mail:**

Michael O'Mullan
Riker Danzig Scherer Hyland & Perretti LLP
One Speedwell Avenue
Morristown, NJ 07962

William G. Brucker
300 Weyman Road
Suite 320
Pittsburgh, PA 15236

Mark A Ciavarella, Jr.
585 Rutter Avenue
Kingston, PA 18704

Michael T. Conahan
301 Deer Run Dr.
Mountaintop, PA 18707


                                THOMAS, THOMAS & HAFER, LLP

                                 s/Scott D. McCarroll_____
                                Scott D. McCarroll

Date:   April 30, 2010