# APPENDIX A

COMMONWEALTH OF PENNSYLVANIA
Pennsylvania Labor Relations Board

AFSCME DISTRICT COUNCIL 87          :
                                    :
        v.                          :   Case No. PERA-C-03-104-E
                                    :
LUZERNE COUNTY                      :

## FINAL ORDER

On July 14, 2004, AFSCME District Council 87 (Union) timely filed with the Pennsylvania Labor Relations Board (Board) exceptions, to a Proposed Decision and Order (PDO) issued June 24, 2004. In the PDO, the Hearing Examiner concluded that Luzerne County (County) did not engage in unfair practices in violation of Section 1201(a)(1) and (5) of the Public Employe Relations Act (PERA) when the Court of Common Pleas for the 11th Judicial District (Court) closed the Luzerne County Juvenile Detention Center (Detention Center), ordered the children in custody to be detained in the Pennsylvania Child Care Facility (PACC) and other facilities and furloughed court-appointed child care employes without prior bargaining. On August 16, 2004, the Union timely filed a brief in support of exceptions in compliance with two extensions granted by the Board Secretary.

After a thorough review of the exceptions and all matters of record, the Board makes the following:

## AMENDED AND ADDITIONAL FINDING OF FACT

9.  The following factors caused the Court to stop using the Detention Center as a temporary residential facility: a reported rodent (rats and other vermin) and cockroach infestation; a leaky roof; inadequate physical disability accessibility; lack of facilities for physical examinations, classrooms and indoor physical education; and inadequate hot water, plumbing, and ventilation. Due to a lack of air conditioning during the summer months, the windows had to be opened through which the detainees passed drugs and contraband. The Detention Center was originally constructed as an adult women's prison, not a therapeutic detention center for children. (N.T. 132-133, 139, 174-175).

25. Adult probation, juvenile probation and the Detention Center are departments within the operational and administrative control of the Court. On February 12, 2003 and again on February 17, 2003, through its juvenile probation department, the Court informed law enforcement agencies that the Luzerne County Juvenile Probation Office would be utilizing the PACC for juvenile detention. (N.T. 120-123, 150; Union Exhibits 10, 11).

## DISCUSSION

On January 1, 2003, the Court closed the Detention Center and furloughed sixteen full-time and seven part-time child care workers who were included in the court-appointed bargaining unit. The Detention Center held juveniles when they were arrested by municipal police

officers because state law prohibits the detention of juveniles with adult detainees or in a jail for more than several hours. Juvenile Act, 42 Pa. C.S.A. § 6326 (b) & (c). When a police officer arrested and detained a child in the County after hours prior to the closing of the Detention Center, the officer would contact the County 911 center, which then contacted the Detention Center to determine whether a bed was available. If there was a bed available, the arresting officers would have brought the juvenile to the Detention Center where the juvenile would be detained for no more than 72 hours prior to a Court hearing. The Court has also historically used other child detention facilities in other counties if there were no beds available at the Detention Center or if the on-duty juvenile probation officer determined that a particular juvenile should not be detained. Following a hearing, the Court can direct that a child be released and sent home; sent to a long-term residential facility, which are public and private facilities different than the Detention Center; or sent back to the pre-adjudication detention facility for re-evaluation.

The following conditions existed at the Detention Center prior to closing: rodent (rats and other vermin) and cockroach infestation; roof leaks; inadequate physical disability accessibility; lack of facilities for physical examinations, classrooms and indoor physical education; and inadequate hot water, plumbing, and ventilation. Due to a lack of air conditioning during the summer months, the windows had to be opened through which the detainees passed drugs and contraband. On December 6, 2002, President Judge Conahan, Juvenile Judge Ciavarella and other Court officials held a meeting with Union officials regarding the planned closing of the Detention Center due to the unsanitary conditions that threatened the health safety and welfare of the juvenile detainees and increased the risk of liability. There was no representative from the Commissioner's Office at the meeting. One week later, President Judge Michael Conahan determined the Detention Center unfit, directed the cessation of Detention Center operations and informed court-appointed bargaining unit employes that the Detention Center would cease operation as of 11:59 p.m. on December 31, 2002 and that staff would be furloughed effective January 1, 2003. Court employes were directed to cease admitting pre-adjudication juvenile detainees, and the Judges refused to send any post-adjudication juveniles to the Detention Center. Between January 1, 2003 and February 14, 2003, all County juveniles were detained in other detention facilities. On February 14, 2003, Northwest Human Services, a private entity, began its operation of the PACC, and the Court approved juvenile detention there as of that date.

The Examiner dismissed the charge of unfair practices, concluding that the Union erroneously charged the County because the Commissioners did not exercise control over the Detention Center nor did they have any authority to hire, fire, direct or supervise the court-appointed, furloughed child-care employes. The Examiner also concluded that constitutional independence of the judiciary and the separation of powers doctrine prohibits the Board from interfering with the Court's exercise of its judicial authority or from reviewing the Court's administration of juvenile detention.

In its exceptions, the Union claims that a default judgment should be entered against the County because they did not respond to or defend the charge. In support of this claim, the Union argues that Mr. O'Reilly, the attorney for the Court, entered his appearance on behalf of

the Court and submitted a letter to the Examiner indicating that he believed that the County was not a proper party to the case. Additionally, the Union faults the Board Secretary for failing to amend the charge to name the Court as the employer, which caused the case to proceed against the County as a matter of course.

Contrary to the Union's claims, the Board's records establish that Mr. O'Reilly did enter his appearance on behalf of the charged respondent, Luzerne County, on April 14, 2003. By letter dated May 6, 2003, Mr. O'Reilly wrote the following to the Examiner: "please note that the Luzerne County Court of Common Pleas was the employer of the affected employees and I will be representing the Court in this matter." Also, the cover page of the hearing transcript indicates that Mr. O'Reilly represented the interests of the Court. Mr. O'Reilly, however, did not at any time withdraw the appearance that he entered on behalf of the County. Accordingly, a review of the record reveals that Mr. O'Reilly represents the interests of both the County and the Court, although the Court was not charged. Therefore, contrary to the Union's claims, the County's interests were indeed represented in these proceedings and the County is not in default.

Furthermore, neither the Board nor the Board Secretary is responsible for amending the Union's charge to designate the proper respondent in the charge or the complaint and notice of hearing. The Commonwealth Court has previously dismissed this argument. Teamsters, Local 771 v. PLRB, 760 A.2d 496 (Pa. Cmwlth. 2000). In this regard, the Teamster Court stated the following:

> The Board is under no obligation to add parties, sua sponte, that have not been charged by a complainant. Unlike the National Labor Relations Board, the Board neither independently investigates pre-complaint charges, nor does it prosecute those complaints. The institution of unfair practice charges is fueled entirely by complainants, with the Board providing the forum for the filing, prosecution and defense of those charges by the parties.

Teamsters, 760 A.2d at 502 (emphasis original).

The Union also contends that the Examiner erred in concluding that the Union improperly charged the County instead of the Court. The Union argues that the separation of powers doctrine prohibits the Board from reviewing judicial actions of the Court, as recognized by the Examiner, and that the bargaining unit's certified bargaining representative is the County Board of Commissioners. Accordingly, claims the Union, it properly charged the County as the respondent.

In Teamsters, supra, the Commonwealth Court opined that, where the union charged the county for the acts allegedly committed by the court administrator, Section 1620 of the County Code[1] requires that "the Commissioners are representatives of the Lancaster Court, and its employees, for representation proceedings and collective bargaining negotiations only, while the power to hire, discharge, and supervise court employees is expressly and exclusively reserved to the Lancaster Court." Teamsters, 760 A.2d at 500 (emphasis added). The Teamster Court further defined the role of the commissioners and the type of

---

[1] Act of August 9, 1955, P.L. 323, as amended, 16 P.S. § 1620.

3

representation proceedings under Section 1620 that come within the commissioners' managerial representation of county employes. Accordingly, the commissioners' role under Section 1620 includes representation matters before the Board and negotiation of collective bargaining agreements on behalf of judges and row officials. Id. "[M]atters within the commissioners' representative purview ultimately concerned the financial terms of employment, which matters did not affect the judges' exclusive discharge and supervisory authority of its employees." Teamsters, 760 A.2d at 500 (citing Ellenbogen v. County of Allegheny, 479 Pa. 429, 388 A.2d 730 (1978)).

In emphasizing the necessity of charging the proper county government employer which has supervisory authority over the affected employes and actually engaged in the conduct complained of, the Teamster Court quoted with approval the Board's decision in Lebanon County Detectives Ass'n v. Lebanon County, 29 PPER ¶ 29005 (Final Order, 1997) wherein the Board stated the following:

> It is critical in unfair practice charges regarding activity subsequent to the negotiation of a collective bargaining agreement for a complainant to charge the public employer which allegedly committed the acts complained of, rather than the county commissioners as the Act 115 designated managerial representative for purposes of negotiating an agreement where the commissioners were not alleged to be an actor in the commission of the unfair practice.

Teamsters, 760 A.2d at 501 (quoting Lebanon County, 29 PPER at 12-13.)

The Teamsters Court also dismissed the claim, asserted by the Union here, that courts cannot be charged with unfair practices. In this regard, the Teamsters Court stated the following:

> A cursory review of unfair practice decisions . . . and the charges therein, reveal numerous Board and Commonwealth court decisions in which courts have been charged with unfair practices under PERA. See, e.g., Teamsters Local 115 (Board had jurisdiction to hear unfair practice charge filed by Teamsters against Court of Common Pleas of Philadelphia County); Dauphin County Peace Officers Association, Local 1251 U.P.A v. Dauphin County Court of Common Pleas, [27 PPER ¶ 27175 (Final Order, 1996)] (Board issued complaint charging Court of Common Pleas of Dauphin County with unfair practices under PERA).

Teamsters, 760 A.2d at 503. Although the Board may not intrude upon the judiciary's exclusive authority to perform its judicial role in the administration and dispensation of justice, Ellenbogen, supra, the Teamster Court and the cases cited by it have clearly established that the Board has the authority to evaluate, under the principles of PERA, a court's relationship with court-appointed employes who are covered by PERA. See also, Bradley, 479 Pa. 440, 388 A.2d 736 (1978) (holding that the judges of the Philadelphia courts are public employers within the meaning of PERA and their court reporters are employes entitled to the rights and protections under PERA and that PERA can be constitutionally applied to the courts). The Teamster Court held that the party responsible for engaging in allegedly unlawful conduct must be charged for the unfair practice. Therefore, although the separation of powers

4

doctrine is a defense for a court designated as a respondent in an unfair practice charge, the doctrine does not preclude charging the court nor does it warrant charging the commissioners due to the purported impact of Act 115, as claimed by the Union. The Commissioners in this case simply did not exercise authority or control over the Detention Center or the furloughed court-appointed employes such that they would be able to effectuate a Board order possibly directing the Commissioners to cease and desist or reinstate the furloughed employes.

The Union also excepts to the Examiner's failure to make certain findings proposed by the Union, most notably, the County's alleged refusal to negotiate the subcontracting of juvenile detention. The Examiner was required to set forth only those facts that were necessary to support his decision. He was not required to summarize all the evidence presented, make findings that are unnecessary or make findings that would support another decision, even if there is substantial evidence to support such findings. Page's Department Store v. Velardi, 464 Pa. 276, 346 A.2d 556 (1975); Ford City Borough, 19 PPER ¶ 19117 (Final Order, 1988); AFSCME v. Dep't Public Welfare, 18 PPER ¶ 18028 (Final Order, 1986).

In its charge, the Union alleged the following:

> On or about January 13, 2003, AFSCME District Council 87 became aware that the County had subcontracted work of the juvenile detention employees to a private operator of a juvenile detention facility and made a demand to bargain over the subcontracting of bargaining unit work. To date, no bargaining has occurred.

(Specification of Charges). The record establishes by substantial competent evidence that the Court in its judicial capacity closed the Detention Center and furloughed child-care staff effective December 31, 2002 at 11:59 P.M. Also, the Court, through its department of Juvenile Probation, directed the use of the privately owned and operated juvenile detention facility known as the PACC. The County did not control the Detention Center nor did it supervise, direct or control the furlough of the Detention Center child care aids in the court-appointed unit. Therefore, the County did not effectuate any transfer or subcontracting of juvenile detention in the County. Accordingly, the County Commissioners did not possess a duty to bargain the transfer of juvenile detention to the PACC or the resulting furlough of Detention Center child-care employes.

Furthermore, the powers of the unified judiciary in Pennsylvania are granted by Article V, Section 1 of the Pennsylvania Constitution. The separation of powers doctrine recognizes the wholly distinct and separate functions of the respective branches of government and prohibits the intrusion upon those functions by other branches. Pa. Const. Art. V § 1; Beckert v. AFSCME, 429 A.2d 859 (Pa. Cmwlth. 1981). The Pennsylvania Constitution empowers the courts of the Commonwealth "to do all such things as are reasonably necessary for the administration of justice." Beckert, 425 A.2d at 862 (citing Sweet v. PLRB, 457 Pa. 456, 322 A.2d 362 (1974)). In Beckert, the Commonwealth Court expressly held that "the discharge of a judicial employee is a judicial power vested by our Constitution in the courts. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government." Beckert, 425 A.2d

5

at 862. "PERA cannot constitutionally be interpreted as immunizing [judicial] employees from the inherent judicial power of discharge. Given that such a power is a judicial one under the Pennsylvania Constitution, it would cease to be a judicial power if its exercise was subject to the monitoring and review of another branch of government." Id. at 863. "For some non-judicial branch of government to be given the power to review such decisions would represent an encroachment on the judiciary's control of hiring and discharging court employes." Id.

The Pennsylvania Juvenile Act expressly grants care, custody and control of detained children to the Court exclusively for both temporary and long-term detentions and for both pre-adjudication and post-adjudication detentions. 42 Pa.C.S.A. §§ 6325-6352. In this case, the record clearly established that the Detention Center had a long history of rodent and cockroach infestation, a leaky roof, inadequate handicap access, no facilities for schooling or physical activity, no rooms for physical examinations, inadequate heating, plumbing and ventilation and no air conditioning. The Detention Center was originally constructed as a women's prison, not a therapeutic detention facility for children. The statutorily mandated therapeutic purposes of juvenile detention could not be served by the Detention Center, and the rodent and insect infestation threatened to infect the detained children with disease. The Court, in the exercise of its judicial function to effectuate its statutory and constitutional obligations to properly provide for the care and custody of detained children, removed them from the Detention Center. The Court's action was a lawful exercise of its judicial function within the meaning of Beckert. Accordingly, the separation of powers doctrine mandates that this Board is unauthorized to review or evaluate the Court's closure of the Detention Center or the furlough of the court appointed child care employes under PERA. Beckert, supra.

Once the Court exercised its judicial authority to provide for the health safety and welfare of detained children by transferring them to cleaner, safer facilities, there remained no work for the court-appointed child care workers. In AFSCME Council 86 v. Clinton County, 24 PPER ¶ 24144 (Final Order, 1993), the Board relied on the United States Supreme Court's decision in J.I. Case Co. v NLRB, 321 U.S. 332, 64 S.Ct. 576 (1944) and opined that PERA does not guarantee the continued existence of work; it only governs the bargaining obligations of the parties over wages hours and terms and conditions of employment provided that the employer has work available for the bargaining unit members. Clinton, supra. An employer does not have an obligation to ensure the existence of work. Id. Therefore, neither the Commissioners nor the Court had an obligation to bargain the closure of the Detention Center or the alleged "subcontracting" of juvenile detention once the job duties of the child care workers ceased to exist as a result of the lawful exercise of the Court's judicial function. Accordingly, the Examiner's decision not to rely on the Union's bargaining demands to the County Commissioners over subcontracting is correct. The Commissioners simply did not engage in the conduct complained of in the charge.

The Board also concludes that the Union's remaining proposed findings are unnecessary to support the Examiner's conclusions. Many of these proposals do not relate to the issues preserved in the charge. Several of the Union's exceptions claim that the Examiner erred in failing to find that the County was the proper party because the Union requested that the Commissioners bargain the financial effects of

6

subcontracting and the impact of subcontracting on wages and benefits. However, the Union failed to complain of impact issues in its charge. The specification of charges is limited to the alleged subcontracting alone which we have already concluded did not involve the Commissioners. In Lackawanna County Detectives' Ass'n v. PLRB, 762 A.2d 792 (Pa. Cmwlth. 2000), the Commonwealth Court, in affirming a Board order, held that an unfair practice charge must allege that the Union demanded bargaining over matters having a "severable impact on terms and conditions of employment." Id. at 795. In this case, the Union failed to set forth such allegations and limited the allegations in the charge to the subcontracting of juvenile detention, the responsibility of which the Union imputed to the County, but which was actually implemented by the Court. Accordingly, the Union's presently claimed impact issues were not before the Examiner.

After a thorough review of the exceptions, response thereto and all matters of record, the Board shall dismiss the exceptions and sustain the Proposed Decision and Order of the Hearing Examiner consistent with this Order.

### ORDER

In view of the foregoing and in order to effectuate the policies of the Public Employe Relations Act, the Board

### HEREBY ORDERS AND DIRECTS

that the exceptions filed to the Proposed Decision and Order in the above-captioned matter be and the same are hereby dismissed and the Proposed Decision and Order is hereby made absolute and final.

SEALED, DATED and MAILED pursuant to Conference Call Meeting of the Pennsylvania Labor Relations Board, L. Dennis Martire, Chairman, and Anne E. Covey, member, this nineteenth day of October, 2004. The Board hereby authorizes the Secretary of the Board, pursuant to 34 Pa. Code 95.81(a), to issue and serve upon the parties hereto the within Order.